UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                            :

UNITED STATES OF AMERICA      :

          - v. -           :       **SUPERSEDING INDICTMENT**

                            :

IBRAHIM ISSA,              :       S2 17 Cr. 74 (CM)
      a/k/a "Tony Issa,"    :

       Defendant.        :

- - - - - - - - - - - - - - - x

**ORIGINAL**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 1 4 2018

<u>COUNT ONE</u>

(Bribing a Public Official)

The Grand Jury charges:

1.   At all times relevant to this Indictment, IBRAHIM
ISSA, a/k/a "Tony Issa," the defendant, owned and operated
numerous vehicle maintenance and repair companies in the
vicinity of, among other locations, New York City, New York;
Detroit, Michigan; Houston, Texas; and Miami, Florida (the "Issa
Companies"). In or about 2012, one of the Issa Companies, which
was based in the Bronx, New York ("Issa Company-1"), executed a
contract with the United States Postal Service ("USPS") to
perform repair, maintenance, and towing work on USPS vehicles
when and as requested by USPS (the "Contract"). Thereafter,
other Issa Companies signed similar contracts with USPS. At all
times relevant to this indictment, ISSA resided in the Southern
District of New York.

2.   USPS stores and maintains its own vehicles at
Vehicle Maintenance Facilities ("VMFs"), which are responsible
for the coordination of all repair, maintenance, and towing of
USPS vehicles.  While certain USPS vehicle work is performed in-
house by USPS employees, VMFs also direct certain repair,
maintenance, and towing of USPS vehicles to third-party
contractors. VMF managers have significant discretion in
deciding whether USPS vehicle repair, maintenance, and towing
work will be performed in-house or directed to third-party
contractors, and they are vested with significant discretion in
selecting which third-party contractor shall perform such work.

3.   From at least in or about 2012 through at least
in or about August 2016, IBRAHIM ISSA, a/k/a "Tony Issa," the
defendant, attempted to bribe, and did bribe, at least three VMF
managers in an attempt to secure in return for these bribes
additional repair, maintenance, and towing work from the USPS
for the Issa Companies. ISSA provided, among other things,
lavish meals, expensive gifts, and cash to VMF managers in an
effort to obtain fees for the Issa Companies relating to the
repair, maintenance, and towing of USPS vehicles.

ISSA's Scheme to Bribe VMF Manager-1

4.   From at least in or about September 2014 through
at least in or about August 2015, IBRAHIM ISSA, a/k/a "Tony
Issa," the defendant, attempted to bribe a manager of a USPS VMF

2

facility located in the New York City area ("VMF Manager-1"), who was working at the direction and under the supervision of law enforcement. In an effort to obtain vehicle repair, maintenance, and towing work for the Issa Companies, ISSA bribed VMF Manager-1 by inviting VMF Manager-1 to lavish meals that ISSA paid for at high-end restaurants, many of which were located in Manhattan, New York. During these meals and on other occasions, ISSA, in sum and substance, requested that VMF Manager-1 direct USPS vehicle repair, maintenance, and towing work to the Issa Companies in exchange for these bribes.

5.      In addition to these lavish meals, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, provided gifts to VMF Manager-1, including a computer tablet, two one-liter bottles of Johnnie Walker Black Label Scotch whiskey, one bottle of Patron Silver tequila, and twelve bottles of wine, all in an effort to obtain in return USPS vehicle maintenance work from VMF Manager-1.

<u>ISSA's Scheme to Bribe VMF Manager-2</u>

6.      From at least in or about December 2015 through at least in or about August 2016, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, attempted to bribe a manager of a USPS VMF facility located in Michigan ("VMF Manager-2"), who was working at the direction and under the supervision of law enforcement. In an effort to obtain vehicle repair, maintenance, and towing work for the Issa Companies, ISSA bribed VMF Manager-2 by

inviting VMF Manager-2 to lavish meals that ISSA paid for at restaurants. During these meals and on other occasions, ISSA, in sum and substance, requested that VMF Manager-2 direct USPS vehicle repair, maintenance, and towing work to the Issa Companies in exchange for these bribes.

7.     In addition to these lavish meals, in or about July 2016, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, offered to reimburse VMF Manager-2's travel expenses for an upcoming trip to New York City. ISSA stated, in sum and substance, that although VMF Manager-2 should pay his own expenses in the first instance, ISSA would later repay VMF Manager-2.

8.     When VMF Manager-2 visited New York City in or about August 2016, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, arranged for ISSA's assistant to take VMF Manager-2 on a tour of New York City. During VMF Manager-2's trip to New York City, ISSA paid for two meals shared by, among others, ISSA and VMF Manager-2. At the first meal, on or about August 9, 2016, ISSA, in sum and substance, requested that VMF Manager-2 provide ISSA with the total cost of the hotel room and flight to New York City.

9.     At a second meal the next evening, on or about August 10, 2016, ISSA asked VMF Manager-2 if he had determined the cost of the hotel room and flight. Later, VMF Manager-2

4

handed ISSA a piece of paper reflecting the total cost of VMF Manager-2's hotel room and flight: $1,083. ISSA then provided $2,000 in United States currency to VMF Manager-2, which exceeded by nearly $1,000 the total cost of the hotel room and flight.

### Issa's Scheme to Bribe VMF Manager-3

10.  From at least in or about 2012 through at least in or about August 2016, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, paid bribes to another manager of a USPS VMF facility located in the New York City area ("VMF Manager-3"). On a regular basis, VMF Manager-3 retrieved bribes consisting of United States currency that ISSA left for VMF Manager-3 at a convenience store owned by one of the Issa Companies.

11.  In addition to these cash bribes, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, also provided VMF Manager-3 with, among other things, free gasoline and cigarettes.

12.  IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, also paid for VMF Manager-3 to travel to Florida on at least one occasion. While in Florida, ISSA paid for at least one of VMF Manager-3's meals.

13.  Throughout this period, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, in sum and substance, repeatedly demanded that VMF Manager-3 ensure that the Issa Companies receive USPS repair, maintenance, and towing work. In return for the bribes

provided by ISSA, VMF Manager-3 directed USPS vehicle repair, maintenance, and towing work to one of the Issa Companies.

### STATUTORY ALLEGATION

14.  From at least in or about 2012, up to and including at least in or about August 2016, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, did directly and indirectly, corruptly give, offer and promise a thing of value to a public official, with intent to influence an official act, and to influence a public official to commit and aid in committing, and to collude in, and allow a fraud, and to make opportunity for the commission of a fraud, on the United States, to wit, ISSA paid and attempted to pay bribes to officials of the USPS in order to obtain fees relating to the repair, maintenance, and towing of USPS vehicles.

(Title 18, United States Code, Sections 201(b)(1)(A) & (B) and 2.)

### COUNT TWO

(Theft of Government Funds)

The Grand Jury further charges:

15.  The allegations contained in paragraphs 1 through 13 of this Indictment are repeated and realleged as if fully set forth herein.

16.  From at least in or about 2012 through at least in or about August 2016, IBRAHIM ISSA, a/k/a "Tony Issa," the

defendant, caused the Issa Companies to fraudulently bill the USPS by, among other things, (i) billing for repair and maintenance work on USPS vehicles that was not in fact performed; (ii) billing the USPS more than once for the same work; (iii) performing unnecessary work that was not requested by the USPS; and (iv) billing for towing of USPS vehicles that did not, in actuality, occur. For example:

   a.   In or about June 2014, one of the Issa Companies was hired to perform maintenance work on a particular USPS vehicle that was never performed.

   b.   In or about October 2014, Issa Company-1 billed the USPS for an unnecessary test performed on a USPS vehicle that the USPS did not request.

   c.   In or about April 2015, Issa Company-1 billed the USPS twice for the same maintenance tests.

                    <u>STATUTORY ALLEGATION</u>

   17.   From at least in or about 2012, up to and including at least in or about August 2016, in the Southern District of New York and elsewhere, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, did embezzle, steal, purloin, and knowingly convert to his own use, and to the use of another, and without authority did sell, convey, and dispose of records, vouchers, money, and things of value of the United States and a department and agency thereof, to wit, the USPS, which exceeded

                             7

the sum of $1,000, and did receive, conceal, and retain the same
with intent to convert it to his use and gain, knowing it to
have been embezzled, stolen, purloined and converted, to wit,
ISSA fraudulently billed the USPS, and fraudulently caused the
USPS to be billed, for vehicle repair, maintenance, and towing
work that was not, in actuality, performed, and also billed the
USPS for vehicle maintenance work that was not necessary and had
not been requested by the USPS.

(Title 18, United States Code, Sections 641 and 2.)

### COUNT THREE

(Conspiracy)

The Grand Jury further charges:

18.    The allegations contained in paragraphs 1 through
13, and 16 of this Indictment are repeated and realleged as if
fully set forth herein.

19.    Pursuant to the Internal Revenue Code and
attendant regulations, U.S. corporations are generally required
to report accurately the corporation's income, tax obligations,
and, where appropriate, any claim for a refund annually on a
United States Corporate Income Tax Return, Form 1120 ("Form
1120"), which must be filed with the Internal Revenue Service of
the United States Department of the Treasury (the "IRS"). If
necessary, and if completed in accordance with relevant statutes
and regulations, a corporation may file an amended return on a

8

United States Corporate Income Tax Return, Form 1120X ("Form 1120X").

20.   From at least in or about 2012 through at least in or about August 2016, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, and a coconspirator not named as a defendant herein ("CC-1"), conspired to underreport and underpay taxes for the Issa Companies for the 2012 tax year.

21.   In or about 2013, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, prepared or caused to be prepared, a false Form 1120 for Issa Company-1 for the 2012 tax year (the "2012 Issa Company-1 Form 1120").  The 2012 Issa Company-1 Form 1120 was sent to the IRS on or about July 12, 2013 from the Bronx, New York and received by the IRS on or about July 15, 2013.

22.   The 2012 Issa Company-1 Form 1120 was false insofar as it, among other things, underreported income and expenses of Issa Company-1.  IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, underreported income and expenses on the 2012 Issa Company-1 Form 1120, at least in part, in an attempt to conceal from IRS scrutiny diversions of funds from Issa Company-1 for ISSA's personal benefit.  For example, ISSA and CC-1, his spouse and employee, regularly paid personal expenses directly from Issa Company-1 accounts.  In addition, ISSA diverted Issa Company-1 funds into cash, which ISSA used to pay certain employees and to enrich himself, his family, and his friends.

23.   On or about May 19, 2014, the IRS notified Issa Company-1 that the IRS discovered additional income of Issa Company-1 not declared on the 2012 Issa Company-1 Form 1120. The IRS's notice did not indicate, however, that it had discovered IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, and CC-1's diversions from Issa Company-1 funds for cash and personal expenses.   ISSA and CC-1, therefore, sought to continue to conceal their diversions, by taking, among others, the following steps:

a.   Along with CC-1, ISSA hired a professional tax preparer to prepare an amended return for Issa Company-1 ("Tax Preparer-1").   ISSA and CC-1 did not, however, inform Tax Preparer-1 of the diversions from Issa Company-1.   Instead, ISSA and CC-1 misrepresented Issa Company-1's finances to evade taxes due and owing.

b.   On or about May 27, 2014, CC-1 emailed Tax Preparer-1, copying ISSA, and provided spreadsheets depicting Issa Company-1's bank records as well as a spreadsheet purporting to summarize those records.   These spreadsheets did not accurately represent those records, but instead mischaracterized Issa Company-1's finances so as to conceal the diverted Issa Company-1 income.   The summary spreadsheet, for example, falsely suggested that the original 2012 Issa Company-1 Form 1120 had omitted significant income from gas sales as well

as a significant expense of gas used to fill Issa Company-1's
fleet of vehicles.  In actuality, the omitted income came from,
at least in part, USPS work and the omitted expenses from, at
least in part, diversions into cash and personal expenses.

   c.   On or about the next day, May 28, 2014, ISSA
emailed Tax Preparer-1, copying CC-1.  Issa stated, "We received
another letter about [Issa Company-1] 2012 taxes.  Please, we
need to move a bid [sic] faster on this.  [CC-1] is fully
capable of answering any questions you may have and then when we
meet next week – [sic] we could move further ahead."

   d.   On or about June 10, 2014, CC-1 sent an
email to Tax Preparer-1, copying ISSA, summarizing Issa Company-
1's profit and loss.  These figures reinforced the
misrepresentations provided in the spreadsheets, including a
purported significant expense for "gasoline for our trucks."
CC-1 also stated in the email, "I spoke to Tony about the
numbers that we discuss [sic] for the amended 2012 tax return
for [Issa Company-1]. . . .  Could you please let me know what
time you can call him and I will make sure he will be
available?"

   e.   In or about August 2014, Tax Preparer-1,
having received the misinformation provided by ISSA and CC-1,
drafted a false amended corporate tax return, Form 1120X,
reflecting those misrepresentations (the "2012 Issa Company-1

Form 1120X"). On or about August 27, 2014, ISSA signed and subscribed the 2012 Issa Company-1 Form 1120X, and it was received by the IRS on or about the same day.

f.    The 2012 Issa Company-1 Form 1120X was fraudulent insofar as it, among other things, falsely stated that sales of gas had been omitted from the original 2012 Issa Company-1 Form 1120, and mischaracterized the nature of purported expenses in an effort to conceal diversions by ISSA and CC-1 from Issa Company-1 for cash and personal expenses. These misrepresentations led Issa Company-1 to pay substantially less in corporate tax than that due and owing.

24.    In addition, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, and CC-1 attempted to and did evade corporate taxes for the 2012 tax year through payments from Issa Company-1 to other Issa Companies. To wit:

a.    In 2012, Issa Company-1 sent funds to four other Issa Companies and, based on those payments, the 2012 Issa Company-1 Form 1120X claimed an expense for "subcontractors." In doing so, ISSA and CC-1 reduced the tax due and owing to Issa Company-1. Such payments also represented income for the other Issa Companies that received funds from Issa Company-1. But ISSA and CC-1 attempted to and did ensure that the full tax due and owing from those payments was not paid.

b.     On or about June 12, 2014, Tax Preparer-1 wrote to ISSA, saying: "Hi Tony: . . Based on the numbers I went over with [CC-1] there is . . . revenues [sic] that went out to related companies.  I will need to see the income tax returns and books and records of each of the companies that received these funds so we can determine how these transactions were recorded. . . .  Please send me those documents so I can look into this further so we can complete amended returns that incorrectly [sic] report the company's income and expenses."

c.     In response, CC-1 emailed Tax Preparer-1, copying ISSA, "I already sent you [the return of a second Issa Company ("Issa Company-2")], which shows no activity.  We did not file 2012 tax returns for [the other Issa Companies that received payments from Issa Company-1]."

d.     Indeed, Issa Company-2 had filed a corporate income tax return, Form 1120, for tax year 2012 on or about November 12, 2013.  But Issa Company-2's return declared far less in income than the payments it received from Issa Company-1 in 2012.

e.     In an attempt to remedy the additional undeclared income of Issa Company-2, Tax Preparer-1 prepared an amended tax return, Form 1120X, for Issa Company-2 that declared as income the payments from Issa Company-1.  On or about January 15, 2015, Tax Preparer-1 sent to ISSA the draft amended return.

In his cover letter, Tax Preparer-1 instructed that ISSA should remit payment to the IRS in the amount of $141,609 and file the amended return "AS SOON AS POSSIBLE."

  f. ISSA neither remitted the recommended payment nor sent the amended return.

  g. In or about 2015, ISSA and CC-1 also caused to be prepared and filed a corporate tax return, Form 1120, for another Issa Company that received payments from Issa Company-1 in 2012 ("Issa Company-3").  ISSA and CC-1 did not, however, ask Tax Preparer-1, who knew of Issa Company-3's income from Issa Company-1, to prepare the 2012 tax return for Issa Company-3. Instead, ISSA and CC-1 asked a different tax preparer to do so ("Tax Preparer-2").

  h. On or about July 28, 2015, CC-1 emailed Tax Preparer-2 and requested that Tax Preparer-2 prepare 2012 tax returns for Issa Company-3.  In that email, CC-1 provided a profit and loss statement for Issa Company-3 for 2012 that omitted the payment from Issa Company-1.  Relying on this misrepresentation, Tax Preparer-2 prepared a false Issa Company-3 2012 tax return, Form 1120, which was filed on or about August 31, 2015.

## STATUTORY ALLEGATIONS

  25. From at least in or about 2012 up through and including in or about August 2016, in the Southern District of

New York and elsewhere, IBRAHIM ISSA, a/k/a "Tony Issa," the
defendant, together with others known and unknown, willfully and
knowingly did combine, conspire, confederate, and agree together
and with each other to defraud the United States of America and
an agency thereof, to wit, the IRS, and to commit offenses
against the United States, to wit, violations of Title 26,
United States Code, Sections 7206(1), 7206(2), and 7201.

26.   It was a part and an object of the conspiracy
that IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, together
with others known and unknown, willfully and knowingly would and
did defraud the United States of America and the IRS for the
purpose of impeding, impairing, obstructing, and defeating the
lawful governmental functions of the IRS in the ascertainment,
computation, assessment, and collection of revenue, to wit,
federal income taxes.

27.   It was further a part and an object of the
conspiracy that IBRAHIM ISSA, a/k/a "Tony Issa," the defendant,
together with others known and unknown, willfully and knowingly
would and did make and subscribe returns, statements, and other
documents, which contained and were verified by written
declarations that the returns, statements, and other documents
were made under the penalties of perjury, and which ISSA,
together with others known and unknown, did not believe to be

15

true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

28.   It was further a part and object of the conspiracy that IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, together with others known and unknown, did willfully and knowingly aid and assist in, and procure, counsel, and advise the preparation and presentation of returns, statements, and other documents, which ISSA, together with others known and unknown, did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(2).

29.   It was further a part and an object of the conspiracy that IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, together with others known and unknown, willfully and knowingly would and did attempt to evade and defeat a substantial part of the income tax due and owing to the United States of America by the Issa Companies for the 2012 tax year, in violation of Title 26, United States Code, Section 7201.

## OVERT ACTS

30.   In furtherance of the conspiracy and to effect the illegal objects thereof, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, together with others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

16

      a.   In or about 2013, ISSA prepared or caused to be prepared the false 2012 Issa Company-1 Form 1120, which was then sent to the IRS from the Bronx, New York.

      b.   In or about 2014, ISSA and CC-1 provided false information to Tax Preparer-1, causing to be prepared the false 2012 Issa Company-1 Form 1120X.

      c.   On or about August 27, 2014, ISSA signed and subscribed the false 2012 Issa Company-1 Form 1120X.

      d.   On or about July 28, 2015, CC-1 provided to Tax Preparer-2 a profit and loss statement for Issa Company-3 that omitted monies received from Issa Company-1, causing to be filed a false Form 1120 for Issa Company-3 for tax year 2012.

(Title 18, United States Code, Section 371.)

## COUNT FOUR

(Tax Evasion)

The Grand Jury further charges:

31.   The allegations contained in paragraphs 1 through 13, 16, and 19 through 24 of this Indictment are repeated and realleged as if fully set forth herein.

32.   From at least in or about 2012 up to and including at least in or about August 2016, in the Southern District of New York and elsewhere, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, willfully and knowingly did attempt to evade and defeat a substantial part of the income taxes due and

owing by the Issa Companies to the United States of America for the 2012 tax year, by various means, including, among others, filing or causing to be filed United States Corporate Income Tax Returns for Issa Company-1 that fraudulently misrepresented Issa Company-1's income and expenses, thereby falsely understating the tax due and owing by Issa Company-1 to the United States.

(Title 26, United States Code, Section 7201; Title 18 United States Code, Section 2.)

## COUNT FIVE

(Aiding and Assisting in the Preparation and Presentation of a False Corporate Income Tax Return)

The Grand Jury further charges:

33.   The allegations contained in paragraphs 1 through 13, 16, and 19 through 24 of this Indictment are repeated and realleged as if fully set forth herein.

34.   From at least in or about 2012 up to and including at least in or about August 2016, in the Southern District of New York and elsewhere, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation of a United States Corporate Tax Return, Form 1120X, of Issa Company-1 for the tax year 2012, which return was false and fraudulent as to material matters, in that it fraudulently misrepresented Issa Company-1's income and expenses, whereas, ISSA then and there knew

and believed that Issa Company-1's income and expenses were different than reported.

(Title 26, United States Code, Section 7206(2); Title 18 United States Code, Section 2.)

## COUNT SIX

(Subscribing to False Individual Income Tax Return
for Tax Year 2012)

The Grand Jury further charges:

35.   The allegations contained in paragraphs 1 through 13, 16, and 19 through 24 of this Indictment are repeated and realleged as if fully set forth herein.

36.   Pursuant to the Internal Revenue Code and attendant regulations, individual U.S. citizens and residents are generally required to report accurately their income, tax obligations, and, where appropriate, any claim for a refund annually on a United States Individual Income Tax Return, Form 1040 ("Form 1040"), which must be filed with the IRS.

37.   From at least in or about 2012 through at least in or about 2015, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, paid for personal expenses with corporate funds of the Issa Companies.

## STATUTORY ALLEGATION

38.   In or around 2013, in the Southern District of New York and elsewhere, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, willfully and knowingly did make and subscribe a

United States Individual Income Tax Return, Form 1040, for the 2012 tax year, which return contained and was verified by ISSA's written declaration that it was made under penalties of perjury, and which return ISSA did not believe to be true and correct as to every material matter, to wit, ISSA, among other things, did not declare, either as income or as a corporate dividend, the corporate funds used to pay ISSA's personal expenses.

(Title 26, United States Code, Section 7206(1); Title 18 United States Code, Section 2.)

## COUNT SEVEN

(Subscribing to False Individual Income Tax Return for Tax Year 2013)

The Grand Jury further charges:

39.   The allegations contained in paragraphs 1 through 13, 16, 19 through 24, and 36 through 37 of this Indictment are repeated and realleged as if fully set forth herein.

40.   In or around 2014, in the Southern District of New York and elsewhere, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, willfully and knowingly did make and subscribe a United States Individual Income Tax Return, Form 1040, for tax year 2013, which return contained and was verified by ISSA's written declaration that it was made under penalties of perjury, and which return ISSA did not believe to be true and correct as to every material matter, to wit, ISSA, among other things, did

not declare, either as income or as a corporate dividend, the corporate funds used to pay ISSA's personal expenses.

(Title 26, United States Code, Section 7206(1); Title 18 United States Code, Section 2.)

## COUNT EIGHT

(Subscribing to False Individual Income Tax Return
for Tax Year 2014)

The Grand Jury further charges:

41.   The allegations contained in paragraphs  1 through 13, 16, 19 through 24, and 36 through 37 of this Indictment are repeated and realleged as if fully set forth herein.

42.   In or around 2015, in the Southern District of New York and elsewhere, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, willfully and knowingly did make and subscribe a United States Individual Income Tax Return, Form 1040, for tax year 2014, which return contained and was verified by ISSA's written declaration that it was made under penalties of perjury, and which return ISSA did not believe to be true and correct as to every material matter, to wit, ISSA, among other things, did not declare, either as income or as a corporate dividend, the corporate funds used to pay ISSA's personal expenses.

(Title 26, United States Code, Section 7206(1); Title 18 United States Code, Section 2.)

## FORFEITURE ALLEGATION

43.   As a result of committing the offenses alleged in Counts One and Two of this Indictment, IBRAHIM ISSA, a/k/a "Tony Issa," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## SUBSTITUTE ASSETS PROVISION

44.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third person;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p) and Title 28, United States

Code, Section 2461(c), to seek forfeiture of any other property

of the defendant up to the value of the above forfeitable

property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
GEOFFREY S. BERMAN
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

IBRAHIM ISSA, a/k/a "Tony Issa,"

Defendant.

## SUPERSEDING INDICTMENT

S1 17 Cr. 74 (CM)

(18 U.S.C. § 201, 371, and 641;
26 U.S.C. §§ 7201 and 7206)

GEOFFREY S. BERMAN
United States Attorney.

Foreperson,

3/14/18 Files Superseding Indictment.

Judge Netburn