```
 1   IBJAAISSC2                    Conference

 2   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 3   ------------------------------x

 4   UNITED STATES OF AMERICA,

 5              v.                           17 CR 74 (CM)

 6   IBRAHIM ISSA,

 7                  Defendant.

 8   ------------------------------x

 9                                           New York, N.Y.
                                             November 19, 2018
10                                           11:00 a.m.

11
     Before:
12
                         HON. COLLEEN MCMAHON,
13
                                             District Judge
14

15                          APPEARANCES

16   GEOFFREY S. BERMAN
          United States Attorney for the
17        Southern District of New York
     JAMES LIGTENBERG
18   SARAH PAUL
          Assistant United States Attorney
19
     BEN BRAFMAN
20        Attorney for Defendant Issa

21   JOSHUA KIRSHNER
          Attorney for Defendant Issa
22

23

24

25
```

1          (Case called)

2          MR. BRAFMAN:  I want to make our morning easier.

3          THE COURT:  I want the tank team to put its

4     appearances on the record again.

5          MR. LIGTENBERG:  Jim Ligtenberg and Sarah Paul, for

6     the government.

7          THE COURT:  Great.  Good morning.

8          OK.  Mr. Brafman, you want to make my morning easier?

9          MR. BRAFMAN:  Yes.  We've provided you with the book

10    with exhibits stamped one through 72.  I don't think that any

11    of them in our judgment are going to be controversial.  I do

12    want to refer your Honor to the Court's order of findings of

13    fact dated November 16, 2018, because before we do that we need

14    to I think amend one fact that your Honor found and I'll be

15    brief.

16         THE COURT:  You may want to amend one fact that I

17    found.  I may not want to amend one fact.

18         MR. BRAFMAN:  I want to call it to your attention.

19         THE COURT:  I don't have a copy of it.  I need to open

20    it.  Thank you.  As you might imagine, it had not been my

21    attention to write.  Then about two o'clock Friday afternoon I

22    said that I won't be fair but I did.  That document came into

23    very quickly on Friday afternoon.

24         All right.  What would you like me to change?

25         MR. BRAFMAN:  Refer to paragraph 18 of the document of

1    the order, "findings of fact".

2              THE COURT:  Yes.

3              MR. BRAFMAN:  You say at some point between May 27 and

4    June 10, 2014, most likely at the meeting referred to in Grand

5    Jury Exhibit A, as Government Exhibit A that's occurred next

6    week doing the first week of June, the decision was made that

7    First Star would indeed file an amended tax return.

8              I believe that has to be pushed out to August 13.

9              THE COURT:  No.

10             MR. BRAFMAN:  Let me just show your Honor one exhibit

11   that we're going to discuss today and you'll see why.

12             THE COURT:  But you didn't introduce it at the

13   hearing.

14             MR. BRAFMAN:  We did, your Honor.  Defendant's exhibit

15   12 at the hearing, it was introduced.

16             THE COURT:  OK.  Yes.

17             MR. BRAFMAN:  There's still on August 13, discussing

18   with the Kovel accountant the discussion to decision to amend

19   and just being told we do not have to file a petition in tax

20   court.  The deadline for a filing an amended return is March

21   15th.  I think we should meet with Paul to go over the amended

22   return.  So clearly on August 13 --

23             THE COURT:  No.  That's not how I read it at all

24   because let's read the whole series.  The whole series of

25   e-mails that are Exhibit 12, starting with the first e-mail on

1    July 10, these are all e-mails where they are, where Daniela

2    Silva is providing Mr --

3            MR. BRAFMAN:   "Tsamulatis".

4            THE COURT:   Mr. Tsamulatis with materials for the

5    corporate tax return.  Most of them are headed "corporate tax

6    return".  They are all about materials or corporate tax

7    returns.  They are not copied to Mr. Ambrose.  He is not on any

8    of those e-mails.  And of course corporate tax return 86, we're

9    still trying to get them.  How are we being to do the

10   bookkeeping without the years of information back up?

11   August 11 says:  Hi Chris.  The due date to send the amended

12   tax return is 8/17/14.

13           The decision had clearly been made and the August 13th

14   e-mail that's copied from Chris that's copied to Ambrose said,

15   I just spoke to Paul.  He informed me he received a response.

16   He does not have to file a petition in tax court.

17           So Mr. Ambrose had obviously asked the IRS if it was

18   necessary to file a petition in tax court since they were

19   planning to file an amended return.  That's how I read it.  Had

20   you asked questions of Mr. Ambrose, he might have disabused me

21   of that notion but I doubt it.  That does not mean that the

22   decision had not already been made.  This was about filing a

23   petition in addition to an amended return.

24           MR. BRAFMAN:   But the amended return had not been yet

25   finalized for filings.  That's the crime.

```
1              THE COURT:  You have your exception.  Tell the fell
2     the Court of Appeals if you are unlucky enough to get there
3     that I was wrong and that the real decision to file an amended
4     tax return was not made in the first week of June but in the
5     second week of August.  Go right ahead.  You have that argument
6     preserved for you for your appeal.  I will not be changing my
7     finding.  I read this stuff too.
8              MR. BRAFMAN:  I understand.
9              THE COURT:  OK.
10             MR. BRAFMAN:  Your Honor, I want to begin if I can,
11    you asked us to identify.  We have prepared a notebook to make
12    it easier.  So a copy has been given to the government.  But I
13    have a preliminary question.  There are a series of e-mails
14    that are merely communications trying to set up meetings with
15    Mr. Ambrose and Mr. Tsamulatis.  And I am not certain whether
16    it matters in the final analysis but they are meetings which
17    would be, I think, represent decisions by Mr. Issa to hire an
18    accountant and a criminal lawyer, and I think those should be
19    suppressed as well.
20             THE COURT:  Can we go through these
21    document-by-document, please?  That's the only thing I want to
22    do.  I don't have time to do anything else.
23             MR. BRAFMAN:  Document One, Exhibit One --
24             MR. LIGTENBERG:  If I may, your Honor?  The government
25    is willing to agree on one through 19.
```

1          MR. BRAFMAN:  I'm sorry?

2          THE COURT:  One through 19 fall within the Kovel

3     privilege.

4          MR. LIGTENBERG:  Yes, your Honor.

5          THE COURT:  Great.  I like that.  So one through 19

6     we're all agreed, fall within the Kovel privilege and the

7     government will argue as to -- I don't know -- some or all of

8     them, that they fall within the crime fraud exception.  The

9     government needs to identify for me and for Mr. Brafman whether

10    there are any e-mails in those 19 sets of e-mails or any

11    documents that, as to which it will say the crime fraud

12    exception does not apply.

13         MR. LIGTENBERG:  Your Honor, we will take a look and

14    enlighten the Court.

15         THE COURT:  Please do that by the end of the day.  I

16    don't want Mr. Brafman punching in the dark any more.

17         OK.  So we're all the way up to 20.

18         MR. BRAFMAN:  So 20, your Honor, is an e-mail dated

19    May 21.  The subject is corporate taxes under Ibrahim Issa's

20    name.  I understand that there are other corporations in play.

21    But this includes, obviously, the one document that's charged

22    in the indictment which is the 2012 return.  And the fact that

23    it's labeled plural should not be the end of the discussion.

24    The Court's required to apply discretion and common sense when

25    you are talking to an accountant at the beginning and can't be

1    bound by how someone labels on e-mail.

2            THE COURT:  Let me ask the government a question.  Why

3    isn't everything up to about the 8th are 10th of June Kovel

4    privilege?

5            MR. LIGTENBERG:  Your Honor, for this e-mail and the

6    set the e-mails that we'll see shortly, it involves a separate

7    tax issue with New York State, not with the IRS and --

8            THE COURT:  You may have that understanding but I,

9    certainly, can't tell that from reading this.

10           MR. LIGTENBERG:  I think, your Honor, if we go to the

11   very next one which is number 22 and I think in subsequent

12   e-mails it becomes clear this is, A, a New York State issue

13   and, B, involves entities other than First Star.  Consistent

14   with your findings of fact from Friday, Kovel is limited to

15   issues with the IRS and issues with First Star, not New York

16   state tax issues for other corporate entities.

17           THE COURT:  Not New York state tax issues for other

18   corporate entities.  Hang on while I get my faith exhibit, the

19   Kovel letter out.

20           MR. BRAFMAN:  To amend 2012 requires you to look at

21   the New York State tax liabilities.  You can do it in a vacuum.

22           THE COURT:  There's something to what Mr. Brafman

23   says.  I mean, that's why it seems to me that we have a bulk

24   issue up until the decision is made and it was clearly made

25   that there's going to be an amended tax return filed.

1          MR. SOLOWIEJCZYK:  Your Honor, if you turn to number

2   22 which as far as I can tell involves the very same issues,

3   you'll see that these are attached statements received from the

4   New York Department of Tax a Finance and that they are hoping

5   for assistance from the accountant in settling these lines.

6          THE COURT:  This one wouldn't fall under the Kovel

7   privilege at all.

8          MR. SOLOWIEJCZYK:  I believe, your Honor, that --

9          THE COURT:  Mr. Ambrose isn't involved.

10          MR. SOLOWIEJCZYK:  -- involves these state tax issues.

11   If you look back at number 20, these e-mails are sent within

12   two hours of each other and I believe subsequent e-mails show

13   that this e-mail chain in 20 involves the New York tax issues.

14          If you also flip through after the e-mail on number

15   22, you'll see that it's the consolidated statement of tax

16   liabilities for INM Shell Service Station, Special Autocare

17   Center.  I don't believe First Star is listed on any of these.

18   So this is clearly a separate state tax issue with New York

19   State that fall outside of the scope of the Kovel.

20          MR. BRAFMAN:  Your Honor, if they try to introduce

21   these tax liabilities at trial there would be a relevance of a

22   403 argument anyway because he is not charged --

23          THE COURT:  Right.  I'd leave them out.  I wouldn't

24   admit them.

25          MR. BRAFMAN:  Your Honor, in fairness when you are

1    developing a relationship with a new accountant and a lawyer

2    and he is given the task of amending a tax return, you cannot

3    amend the tax return without understanding where some of the

4    money of First star Auto may have either come from or gone to.

5          THE COURT:  Well, and I didn't make a reference to

6    this because I decided it was not relevant in light of the

7    literal language of the Kovel letter.  But I do recall there is

8    an e-mail that I saw that was introduced at the hearing in

9    which Daniela Silva and Mr. Tsamulatis were discussing the fact

10   that the reason that, the corporation in addition to First star

11   that retained Mr. Tsamulatis separately "holdings" something or

12   other, one of the separate retainer agreements.  And the reason

13   that that corporation had to file a tax return was because it

14   had received money from First Star.

15         MR. BRAFMAN:  Yes, judge.  Money from First Star

16   closed and therefore A and E would be irrelevant.  So I don't

17   know if the government is giving them away.  But, B, in the

18   beginning this relationship which is a couple of day, weeks

19   after being retained and before the decision is made to file an

20   amended return or a tax petition, you need to know the picture

21   and this helps the accountant decide if amending the return is

22   and Mr. Ambrose is amending the return is the right way to

23   proceed.

24         And if you look at the next e-mail on May 21 which is

25   Exhibit 23, you can see it immediately involves a discussion

1   with Paul who is Paul Ambrose recognizing that Tsamulatis and

2   Ambrose need to get some guidance here or confer and come up

3   with a game plan.

4           THE COURT:  There's no way for me to know one way or

5   another whether this played into the decision whether to file

6   an amended tax return.  Frankly, I intend to err on the Kovel

7   issue.  I intend to err on the side of excluding, not

8   including.  I think that's what I am supposed to do.  And it

9   does strike me that if these do have something to do with state

10  tax issue, you are not prosecuting state -- you're not

11  prosecuting anything.  You're a tank team.  But your buddies

12  are not prosecuting any state tax issues and I wouldn't admit

13  them in any event and you can tell them I said that.

14          Now I suppose it is entirely possible -- and this

15  continues through 25 and 26.  It's to discuss the New York

16  State tax -- of liabilities.  I am looking at 26 at the top to

17  Mr. Issa and Ms. Vasquez from Mr. Ambrose with a copy to

18  Mr. Tsamulatis.

19          Good morning, Tony.  I will be available after three

20  p.m. today to discuss New York statement of liabilities.  You

21  will need to note the alleged tax -- filed returns or estimated

22  returns for failure to file.  The taxes range from withholding

23  sales, DOL and corp.  True, it's all state tax issues.  But I'm

24  simply not able to break out the relevance of those to the

25  ultimate decision to file a federal return and I'm not inclined

1    to since they are not relevant anyway, unless you can connect

2    them to the federal return which I don't think is anybody's

3    plan to do.  I just don't see why I should waste my time

4    agonizing over this when I can take the issue out of the case.

5            MR. LIGTENBERG:  That's fine, your Honor.

6            THE COURT:  One of my favorite things to do is to take

7    issues out of the case.

8            MR. BRAFMAN:  Mine too, judge.  Thank you.

9            THE COURT:  Well, I think it goes through 27 and 28.

10   Most of which are I need to different time.  When can we have

11   this meeting?  You know, I'm not available from two to six.  We

12   need to have a meeting.

13           MR. BRAFMAN:  Right.  So that's 28, 29.

14           THE COURT:  Twenty-nine, 30 and we get to 30 and 30 is

15   the First Star Auto 2012 corporate taxes.

16           MR. BRAFMAN:  So that's clearly Kovel.

17           THE COURT:  Right.

18           MR. LIGTENBERG:  Your Honor, we agree that it falls

19   within the scope of Kovel.  Obviously, as mentioned earlier, we

20   reserve the right to make a crime fraud argument.

21           THE COURT:  Understood.

22           MR. BRAFMAN:  Number 30 comes with an attachment.

23           THE COURT:  It's the attachment that gives the crime

24   fraud argument its heft.

25           MR. BRAFMAN:  Correct.  And if you are will note, the

```
 1   third item on the attachment is First Star Auto.  So it does --
 2              THE COURT:  The subject is First Star Auto.  The
 3   subject of the e-mail is First Star Auto.
 4              MR. BRAFMAN:  I understand.  But I think it supports
 5   your Honor's decision on the earlier e-mail because the statute
 6   includes First Star Auto Repair and it's clear the accountant
 7   is given the whole picture.
 8              THE COURT:  What's happened obviously, they started
 9   with a federal tax issue.  This state tax issue then a month
10   later reared its ugly head.  They set up a meeting to talk
11   about that.  They added to the agenda of that meeting the
12   federal tax.  They probably talked about everything.  I don't
13   know.  I wasn't there.  But that meeting took place early in
14   June and from and after that everything that Mr. Tsamulatis did
15   was as an accountant and there's no evidence in front of me in
16   connection with this hearing that we have last week that
17   Mr. Ambrose ever gave any other legal advice in connection with
18   First Star Auto's 2012 tax return.
19              MR. BRAFMAN:  Yes.  And I think if you look at Exhibit
20   31 and the second page I believe it's clear that that is under
21   Kovel.  And I hope the government would consent because second
22   page there is a reference in an e-mail where the lawyer, the
23   defendant's agent and Mr. Ambrose are all discussing we need to
24   discuss the best response.
25              THE COURT:  Well, that's the essence of the findings
```

1    of fact.  I saw that e-mail and I said they hadn't made a

2    decision as of that point.

3              MR. BRAFMAN:  Yes, your Honor.

4              MR. LIGTENBERG:  Your Honor, in light of your Honor's

5    ruling with regard to the state tax issues, we're willing to

6    say at least through 35 falls within the code.

7              THE COURT:  OK.  Great.

8              MR. LIGTENBERG:  Even with respect to 36, we agree

9    that's within Kovel.  We would likely be presenting a crime

10   fraud argument.

11             THE COURT:  You are reserving crime fraud arguments.

12   You are reserving relevance arguments on behalf of the trial

13   team for things that have nothing to do with the state taxes.

14   None of those arguments is being forfeited.  I think it's

15   really important just to focus on Kovel.

16             MR. LIGTENBERG:  Yes, your Honor.

17             MR. BRAFMAN:  Then 36 should be suppressed as well.

18   That's the returns.  That's the IRS advice and reference to

19   this loyalty.  We agree not that it should be suppressed but

20   that it falls --

21             THE COURT:  Well, the answer is it will be suppressed

22   unless it is otherwise admissible because the privilege doesn't

23   count.

24             MR. BRAFMAN:  Item 37 again, your Honor, this is the

25   fourth decision and it references other companies but it also

1   references in the body of the e-mail the second paragraph, a

2   strategy for First Star response to IRS 2012 notice which again

3   points up why your Honor can't parse out what was being

4   discussed by corporation corporation.  And exercising

5   discretion and just plain common sense indicates that they're

6   looking at how to amend that they need to understand what's

7   happening before they amend.

8        THE COURT:  I told you that my preliminary read up to

9   the date of that meeting and I don't know if the meeting can be

10  established to say that the Kovel privilege attaches and that

11  from and after that meeting it doesn't.

12       MR. BRAFMAN:  OK.  And I also then ask your Honor to

13  move to 38.

14       THE COURT:  Thirty-seven is obviously before that

15  meeting because no decision has been made.

16       MR. BRAFMAN:  Correct.  And 38 is before that meeting

17  because it's June 4 and if you --

18       THE COURT:  Well, I don't know the date of the

19  meeting.  I only know it took place in first week of June.

20       MR. BRAFMAN:  Your Honor's order indicates that we go

21  up to June 10 because that's the first sign that you have --

22       THE COURT:  That's first sign I had then.

23       MR. BRAFMAN:  Right.

24       THE COURT:  If I find out what the date of the meeting

25  is, I may change the date.

1          MR. BRAFMAN:  I understand.

2          Your Honor, 38 if you turnover to the -- I know the

3    first page talks about hybrid corporate taxes but it's an

4    e-mail chain that begins on the bottom of page two where --

5          THE COURT:  Well, it's a repeat of 37.  So we don't

6    need to admit it and the rest of it has nothing to do with

7    First Star Auto.  So it doesn't fall within the Kovel

8    privilege.

9          MR. BRAFMAN:  But it does, judge, when you look at the

10   return First Star gave a lot of money to hybrid.  That's one of

11   the problems in amending the return.  And if you look at the

12   bottom of page two, the same paragraph is continued that this

13   is a strategy for the First Star response to IRS 2012 notice.

14   This is a continuing conversation.  This should all be really

15   one exhibit.  We've already agreed that 37 is under Kovel and

16   37 and 38 is a continuing conversation.

17         THE COURT:  There's so much repetition.  There is so

18   much redundancy in these exhibits.  So many of them they're

19   like four or five of them that have the June 3 e-mail where the

20   Optimum Grocery Store stuff is in a bigger type font.

21         MR. BRAFMAN:  You can't just --

22         THE COURT:  Ah, the meeting this Thursday.

23         MR. BRAFMAN:  There is a calendar entry.

24         THE COURT:  The meeting took place on June 5.

25         MR. BRAFMAN:  We put that into evidence, your Honor.

1          THE COURT:  OK.  Fine.

2          MR. BRAFMAN:  Judge, there are e-mails after the

3    meeting where they're still continuing to discuss the amended

4    return.

5          THE COURT:  Well, discussing the amended return is

6    different than discussing whether to file an amended return.

7          MR. BRAFMAN:  Your Honor, if you look at 63 --

8          THE COURT:  No.  I don't want to.  I want to go

9    exhibit-by-exhibit.  I don't want to go to 63.

10          MR. BRAFMAN:  The reason why I want you to go is to

11    inform your decision as we proceed because you are stuck on the

12    date of the meeting.

13          THE COURT:  The date of the meeting was June 5.

14          MR. BRAFMAN:  Yes.  But what happened at that meeting?

15    If you look at Exhibit 63, the first page, they're still

16    discussing what is the update on First Cooperation taxes

17    response.

18          THE COURT:  No.  Sorry.  I don't buy it.  I don't buy

19    it.  A decision was made.  It's clear from the e-mails that

20    follow the June 5 meeting a decision was made to file an

21    amended return.

22          MR. BRAFMAN:  Yes.  But the materials continuing to be

23    forward --

24          THE COURT:  They continued to be forwarded to him and

25    I said everything that's forwarded to him then is in his

1    capacity as an accountant.  It doesn't fall within Kovel.

2    There is no lawyer on these e-mails.  He is giving, he is being

3    an accountant.  He is preparing the amended tax return.  And

4    that activity does not fall within Kovel.  Only the decision

5    whether the strategy will be to file a tax an amended tax

6    return or not falls within Kovel.  That's legal advice.

7    Preparing a tax return is not legal advice.  I couldn't have

8    been clearer about that.

9              MR. BRAFMAN:  Yes.  But if you look at Exhibit 70

10   which is one of the last exhibits there is still discussion

11   about whether or not the numbers are going to be decided prior

12   to filing.  Your Honor, the crime is not the decision to file.

13   The crime is the return.  And in this case Ambrose, Daniela and

14   Chris are all discussing with Paul that the second response to

15   the IRS, what are we going to do?  How are we going to prepare

16   the return?  Their argument is that the return was prepared

17   illegally.  Our argument is the return was prepared.

18             THE COURT:  Sorry.  The due date is 8/17.  They have

19   been working on the return.  You can tell from the e-mails.

20   You can tell from Tsamulatis's testimony he started working on

21   the return in the middle of June.  So it did come out at the

22   hearing that they sent the completed return to Mr. Ambrose for

23   his review before it was filed.  It did come out.  So that

24   doesn't mean that the work that was done prior to that date of

25   filling out the return is Kovel privileged work.  There may be

1   a question about whether there are one or two e-mails relating

2   to Mr. Ambrose's review of the mere accountancy that was

3   performed by Mr. Tsamulatis and maybe those are the e-mails

4   that you are pointing to but that doesn't mean that

5   everything -- I am not retreating from my decision that

6   Mr. Tsamulatis's work in preparing the tax return was mere

7   accountancy.  You have your exception.

8           MR. BRAFMAN:  Can I just add one comment, judge,

9   because I think I know when I've lost an argument.  I don't

10  want to belabor it.

11          THE COURT:  Of course you do.

12          MR. BRAFMAN:  But I don't want to fight with you.  I

13  just want you to please recognize that the preparation of the

14  return is not the crime that's being charged.  It is the filing

15  of the return.  And the finalized return is not filed until

16  after Ambrose and the accountant sign-off on the decision, not

17  just to file it but to file this return.

18          THE COURT:  Sorry.  Save it for the circuit.

19          MR. BRAFMAN:  OK.  Well, they have to convict him

20  before we get to the circuit.

21          THE COURT:  That's true.  I always say if you are

22  unlucky enough to be there, you have this argument.

23          MR. BRAFMAN:  Thank you, judge.

24          Your Honor, I'll have you agree that number 39 is

25  under the Kovel because that clearly is referenced to the

1   second letter than June 4.

2          MR. LIGTENBERG:  We agree on 39.

3          THE COURT:  Fine.

4          MR. BRAFMAN:  Forty then would fall under the same.

5          THE COURT:  It's the same e-mail over and over and

6   over again.  Fort is purely redundant.

7          MR. BRAFMAN:  And 41, as well.

8          MR. LIGTENBERG:  Yes, we agree, your Honor.

9          MR. BRAFMAN:  And 42 is a follow-up and it is now on

10  June 14.

11         THE COURT:  Forty-two is June 10.

12         MR. BRAFMAN:  Sorry.  June 10, yes, your Honor.

13         THE COURT:  From Daniela to Paul Ambrose.

14         MR. BRAFMAN:  That falls within the time period

15  covered by your Honor's ruling.

16         THE COURT:  Well, except look at what the -- it's

17  Ibrahim Issa taxes paid 2010 PDF, untitled attachment, Ibrahim

18  Issa taxes paid 2010, untitled attachment.

19         MR. BRAFMAN:  I'll withdraw this exhibit but I reserve

20  my argument on relevance because it's got nothing do with the

21  crimes charged.

22         THE COURT:  This is purely relating to state matters

23  and Mr. Issa's personal taxes and that is not comprehensible

24  within the Kovel letter.  I am holding this lawyer, this very

25  fine lawyer, even tax lawyers have to be precise in their

1    language.

2              MR. LIGTENBERG:  Your Honor, the government thinks we

3    can just stop right here given the meeting was on June 5 and

4    this is in chronological order.  Everything here post dates the

5    decision to file an amended return.  So we think everything

6    from here on out is pure accountancy consistent with your

7    Honor's findings of fact.

8              MR. BRAFMAN:  But, your Honor, to be candid, your

9    Honor, I think arbitrarily cutting this off when you look at

10   June 10, the e-mail behind 43 --

11             THE COURT:  Yes, I know.  I am looking at the one at

12   the bottom of the page, it's to Chris from Daniela.

13   Mr. Ambrose was copied and Tony asks Chris to call him about

14   money he's transferred to other corporations.

15             There is no indication that Paul is going to be

16   involved in that.  I don't see that that is Kovel privilege.

17             MR. BRAFMAN:  Your Honor, the subject matter is First

18   Star 2012 tax return.

19             THE COURT:  We are at a point when the decision has

20   been made to file an amended tax return.  It's my finding based

21   on the evidence that I heard that that decision was made at 9

22   June 5 meeting.

23             MR. BRAFMAN:  But they're talking about the exact

24   numbers coming from client to his accountant who he has a good

25   faith basis to believe is under Mr. Ambrose privilege.  At that

1   point a bell does not go off and say, Mr. Issa, you are on your

2   own.

3          THE COURT:  But that's too bad, isn't it?  The

4   privilege doesn't last as long as Mr. Issa thinks it lasts.

5   Privilege lasts only in connection with the kind of work and

6   I'm sure Mr. Issa wasn't up on the law on this.  Frankly, I

7   wasn't until very recently.  The kind of work that's being

8   done, even if Mr. Ambrose tries to make it privileged.  It's a

9   certain kind of work.  It's not privileged.  Even that work is

10  mere accountancy and that's what this is.

11         MR. BRAFMAN:  Kovel accountants are doing mere

12  accountancy.  They're working under an attorney.

13         THE COURT:  The point is their work is privileged only

14  when they are giving advice to the attorney so that he can give

15  advice to the client.

16         MR. BRAFMAN:  Yes.

17         THE COURT:  The advice I find -- and I'm saying this

18  for the last time and we're not going to discuss it again --

19  was given at a meeting on June 4 when a decision was made.  I

20  actually think was made a lot earlier but I am going to say it

21  was made on June 4.  A decision was made that the corporation

22  First Star, the only taxpayer covered by the Kovel letter would

23  file an amended return.  From and after that time there was no

24  evidence before me at the hearing and I see no evidence in this

25  e-mail that Mr. Ambrose was asked for his legal advice.

1          MR. BRAFMAN:  But, your Honor, he is providing numbers

2     that go into the return.

3          THE COURT:  Sorry.  You've got your exception.  I am

4     not going to discuss it any more.

5          MR. BRAFMAN:  All right.  So I have to, you know, do I

6     have to go through these or do I have an exception?

7          THE COURT:  You have an exception.  I think we are

8     done.  The rest of them are not going to come in under Kovel

9     except if you have some e-mails from at or about the time when

10    Mr. Ambrose you know, that Mr. Ambrose was asked to review the

11    tax return that was prepared by Mr. Tsamulatis.  We know he was

12    asked to look at it before it was sent in to the IRS.  That

13    happened in the middle of August.  So there may be some e-mails

14    that are privileged in that time period.  I don't think.  I

15    don't know if you can point them out to me.

16         MR. BRAFMAN:  May I just have a moment?

17         THE COURT:  Sure.  Jim says I misspoke.  Would be

18    excluded pursuant to Kovel.  Never mind.  Just forget that.

19    Strike that.  I don't know what I said.  I'm not going to unsay

20    it and resay it.  I've said it enough times.

21         (Pause)

22         MR. BRAFMAN:  Your Honor, if I can please look at

23    Exhibit 63.  That's in August and that's from Mr. Issa and it

24    relates to corporate tax returns and one is the update of First

25    Star corporate taxes and then there is an attachment which is

1    all of the financial information that Mr. Tsamulatis is

2    submitting.  I'm sorry.  Has gotten from the client for the

3    preparation of --

4                THE COURT:  No.  Nice try.

5                MR. BRAFMAN:  Your Honor, number 69 on the bottom it

6    is estate continuation of e-mail chain discussion with

7    Mr. Ambrose is specifically referenced on the bottom of that

8    exhibit.

9                THE COURT:  Right.

10               MR. BRAFMAN:  And it's whether or not to amend the

11   return.

12               THE COURT:  No.  They don't have to file a petition in

13   tax court.

14               MR. BRAFMAN:  It's important that we go over the

15   numbers prior to filing.  All together means Ambrose too.  How

16   is that not privilege.  Even if the decision was made to file

17   the return, there is a discussion among counsel and the

18   accountant.

19               THE COURT:  I just said to you five minutes ago, I am

20   sure there are some e-mails as to which you will want to,

21   attorney/client privilege.

22               MR. BRAFMAN:  This is it.

23               THE COURT:  Because Mr. Ambrose testified that he was

24   sent the return, the fact that he was sent the return and asked

25   to look at it before it was filed, does not make the work that

1       was done in the intervening two months anything other than mere

2       accountancy but.  His review of those numbers is clearly

3       attorney/client privilege.  I don't deny that.  I don't think

4       the government defies that.

5               MR. BRAFMAN:  So are we then agreeing on 69 as being

6       either under Kovel or just privilege?  And you have to look at

7       70 well?

8               THE COURT:  The e-mail that would be attorney/client

9       privilege which is also the only e-mail that's not somewhere in

10      some other chain of e-mails is the e-mail at the bottom of the

11      first page from set CPA to Daniela with a copy to Paul Ambrose,

12      that's one e-mail, is the only one that would fall under a

13      potential.  It's actually an attorney client privilege.

14              MR. BRAFMAN:  Then that's the same e-mail in the

15      Exhibit 70, judge.  It just carries forward.

16              THE COURT:  No, 70 is, hi, Chris.  Tony wants to go

17      over the numbers with you first before we meet with Paul.  OK?

18      Tony and Chris going over the numbers is not Kovel privilege

19      because it relates to the mere accountancy work that was done

20      by Chris.

21              MR. BRAFMAN:  But the privileged e-mail is right below

22      that.  That's what they're responding to.

23              THE COURT:  "OK.  Thank you?"  Oh, any place that we

24      find the "I just spoke with Paul" e-mail, it can be redacted.

25      All right?

1          MR. BRAFMAN:  Yes, your Honor.

2          Your Honor, those are the materials without waiving

3    our --

4          THE COURT:  You waived no objections.

5          MR. BRAFMAN:  Thank you, judge.

6          THE COURT:  All right.  So really by the end of the

7    day it seems to me that the government should advise

8    Mr. Brafman and his team of which e-mails it would say fell

9    within the crime fraud exception.  So that he has something to

10   punch at.  And if I can get I guess simultaneous briefs from

11   both sides about why those fall within the crime fraud

12   exception or why they don't fall within the crime fraud

13   exception.

14         MR. BRAFMAN:  Your Honor, could we --

15         THE COURT:  And it's a holiday.

16         MR. BRAFMAN:  But could we do it so that we get at

17   least the morning tomorrow to respond?  Otherwise, we may be

18   talking about --

19         THE COURT:  I was talking about next Monday.

20         MR. BRAFMAN:  I'm sorry.  Yes.  That's fine.

21         THE COURT:  It's a holiday this week, Mr. Brafman.

22         MR. BRAFMAN:  I know that, judge.

23         THE COURT:  I actually think people should take the

24   holiday.

25         MR. BRAFMAN:  So the government is going to address

1    which e-mails?

2            THE COURT:  Yes.  They can tell you that tomorrow

3    early tomorrow.

4            MR. BRAFMAN:  Then we can respond by -- we had a

5    pretrial conference scheduled but I think we've agreed on

6    consent and I think your Honor has scheduled it for Monday at

7    10:30.  Is that correct, your Honor?

8            THE COURT:  I don't know.  Did we?

9            MR. BRAFMAN:  A final pretrial conference.

10           COURTROOM DEPUTY:  Yes.

11           THE COURT:  So I'll get briefs.  It'll be a useless

12   conference.  Make it Wednesday, the final pretrial conference

13   at ten o'clock.  Monday submit briefs.  I don't want to have an

14   argument when I haven't read the papers.  I just don't want to

15   do that.  Frankly, I'm not going to be here this weekend.

16           COURTROOM DEPUTY:  The final pretrial conference is

17   now Wednesday the 5th.

18           THE COURT:  You are looking at the wrong date.  It's

19   the 29th of November.

20           MR. BRAFMAN:  This is the final pretrial conference?

21           THE COURT:  At which time I will make a decision on

22   the crime fraud.

23           COURTROOM DEPUTY:  Wednesday, the 28th at ten o'clock.

24           THE COURT:  And at that moment I will make a decision

25   on the crime fraud exception.

1          MR. BRAFMAN:  Twenty-eighth at ten o'clock, nothing on

2     Monday.

3          THE COURT:  Except you are going to send me a brief.

4          MR. BRAFMAN:  Yes, ma'am.  And have a happy holiday.

5          MR. LIGTENBERG:  When are the briefs due?

6          THE COURT:  Monday.

7          MR. LIGTENBERG:  What time?

8          THE COURT:  Let's say by noon.

9          MR. LIGTENBERG:  Thank you, your Honor.

10         MR. BRAFMAN:  I thought we were going to be responding

11    to the government.

12         THE COURT:  I said simultaneous briefs.

13         MR. BRAFMAN:  Your Honor, we will also I think by

14    Monday be filing a motion to dismiss certain counts of the

15    indictment just predicated on our view of what happened in the

16    grand jury.

17         THE COURT:  Well, I will rule on no motion addressed

18    to the grand jury without reading what happened in the jury.

19    So since you are going to make that motion the government

20    should bring the grand jury minutes.

21         MR. BRAFMAN:  Thank you, judge.

22         THE COURT:  I said I feel like a state court judge.

23         MR. BRAFMAN:  I know it burdens the Court, but to be

24    honest with you, it's one of the advantages in state court

25    where at times the prosecutors has to be a little bit more

```
 1    careful knowing it's going to be reviewed.  No disrespect to

 2    anyone in the courtroom, but I have found that that notion in

 3    state court helps that process.

 4              THE COURT:  I don't disagree with you.

 5              MR. BRAFMAN:  Try my best.

 6              THE COURT:  There are many things about state court

 7    that oddly I think make a great deal of sense.

 8              MR. LIGTENBERG:  Your Honor, just to clarify, when

 9    would you like the government to have the grand jury minutes?

10              THE COURT:  ASAP.

11              MR. LIGTENBERG:  Thank you, your Honor.

12              MR. BRAFMAN:  I think the non tank team promised a

13    list of witnesses sometime late today.

14              THE COURT:  OK.  Thank you all.

15              (Adjourned)

16

17

18

19

20

21

22

23

24

25
```