IBSPISSC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                          17 CR 0074 (CM)

IBRAHIM ISSA, a/k/a "Tony
Issa,"

                Defendant.
------------------------------x
                                      New York, N.Y.
                                      November 28, 2018
                                      10:20 a.m.


Before:

                    HON. COLLEEN MCMAHON,

                                      Chief District Judge


                          APPEARANCES


GEOFFREY S. BERMAN,
     United States Attorney for the
     Southern District of New York
ELIZABETH HANFT
NOAH SOLOWIEJCZYK
KYLE WIRSHBA
     Assistant United States Attorneys

BRAFMAN & ASSOCIATES, P.C.
     Attorneys for Defendant
BENJAMIN BRAFMAN
JOSHUA KIRSHNER
STUART GOLD


ALSO PRESENT:  SPECIAL AGENT ANTHONY DUBAR, USPS OIG
               PRIYA KUURLALL, Paralegal with Mr. Brafman
```

IBSPISSC

        (In open court)

        (Case called)

        MS. HANFT:  Good morning, your Honor.  Elizabeth Hanft, Kyle Wirshba and Noah Solowiejczyk for the government, and with us here at counsel table is Special Agent Anthony Dubar from the United States Postal Service, Office of the Inspector General.

        THE COURT:  Hi there.

        MR. BRAFMAN:  Good morning, your Honor.  Benjamin Brafman, Josh Kirshner and also Stuart Gold, attorneys, and Priya Kuurlall, who is a paralegal who will be joining us at trial.  Good morning.

        THE COURT:  Good morning.  Okay.  I've disposed of the outstanding motions.  I have a letter from Mr. Brafman, which I barely had a chance to glance at.  Let me start with the government.  Any issues from the government that have to be disposed of before trial?

        MS. HANFT:  Aside from the letter from Mr. Brafman, your Honor, the only thing we wanted to put on the record was just that a formal plea offer in this case was extended in January of 2017.  It was later withdrawn.  Since then, the parties have engaged in plea negotiations informally as recently as a few weeks ago, but a formal plea offer has not been made.  As defense counsel indicated, the defendant was not interested.

IBSPISSC

1      THE COURT:  Thank you.

2      MS. HANFT:  Other than that, your Honor, we only would
3 like to address the defense counsel's letter.

4      THE COURT:  Okay.  Which I don't have a copy.

5      MR. BRAFMAN:  Your Honor, very briefly.  The defendant
6 and counsel have extensively discussed the different plea
7 offers and the defendant has maintained from the very beginning
8 that he wants this trial, that he is not guilty, and we are
9 proceeding to trial.

10      And I stipulate that the government has, in fact,
11 extended plea offers.  We've talked about them on different
12 occasions, but as we speak, the defendant is determined to go
13 to trial, and we are prepared to do that.

14      THE COURT:  Mr. Issa has always taken that position.

15      MR. BRAFMAN:  Yes, ma'am.  Your Honor, very briefly.
16 The only thing -- I'm not going back to the Court's ruling on
17 anything.  I think we've preserved the record on that, and I
18 appreciate the time your Honor has given us on that.

19      We have submitted a letter, and just briefly, Judge,
20 the evidence in this case will show that both the undercover
21 U.S. Postal Service cooperating witnesses and the defendant, at
22 various times, discussed certain ethical prohibitions that are
23 in the defendant's contract and are also known to the Postal
24 Service officers.

25      In words and substance, they are not permitted to take

IBSPISSC

1  anything from someone who does business with the Post Office,
2  and if a vendor offers something, then the contract provides
3  that the contract is voidable and the Postal Service person
4  could lose his or her job or be brought up on ethical charges.

5          It is nothing -- it has nothing to do with the crime
6  charged, in that you could violate the terms of your agreement
7  by offering a cup of coffee to someone who you're doing
8  business with, and it doesn't rise to the level of bribery
9  because it doesn't have the elements that I think your Honor
10 will ultimately charge this jury.

11         We don't want the jury to be confused about this issue
12 for the weeks of the trial; so we're asking the Court to
13 simply, when you have your preliminary instructions, include
14 just a brief statement about that.  It's a correct statement of
15 the law, and it's something that both parties are going to be
16 discussing, I think, at various times -- certainly the defense
17 will at various times during the trial.  And I think the jury
18 should --

19         THE COURT:  I hear you.

20         MR. BRAFMAN:  Okay.

21         THE COURT:  I've always wanted to give a charge at the
22 beginning of the case, but that means giving the charge.  That
23 doesn't mean give a little excerpt of the charge.  It means
24 give the charge.

25         MR. BRAFMAN:  But if they were -- in the case where,

1   like this, for example, where there is going to be some --
2           THE COURT:  I won't give part of the charge.  I will
3   not give part.  I'm happy to give the entire bribery charge
4   upfront.  You'll hear me say several of the counts will involve
5   this.  I'm going to charge you on this at the beginning and at
6   the end, unless the government has some overwhelming objection.
7   But then I'll get to work on the charge, like I have nothing
8   better to do for the rest of this week.  But I will not give a
9   little, one-paragraph preces.  I will give charge.
10          MR. BRAFMAN:  But I --
11          THE COURT:  They will hear all of the elements.
12          MR. BRAFMAN:  Yes, your Honor.  In the alternative,
13  what we would then be asking, and it doesn't have to be done
14  now, is when these issues arise in the course of the testimony,
15  we would be asking for a curative instruction, just explaining
16  to the jury that the issue of ethics is not what they are on
17  trial for.
18          THE COURT:  Well, they will certainly be charged at
19  some point that ethics, ethical violations are not what they're
20  on trial for; that he's on trial for violations of certain
21  statutes that have certain elements, each of which the
22  government must prove beyond a reasonable doubt to the
23  satisfaction of 12 jurors.
24          MR. BRAFMAN:  I understand that, and I'm not going to
25  belabor the issue.  I just want the Court to think about the

1  following.  If they hear evidence that my client gives

2  something of value to a government witness, they may conclude

3  that that is what the charged crime is, and you will ultimately

4  explain the charge of bribery.  But if I give a Postal Service

5  person a cup of coffee, I may lose my contract because it says

6  you can't do that, but that is not, by itself, a crime, we

7  submit, even if it violates the rules of the Postal Service,

8  and I think --

9              THE COURT:  Sounds like your closing argument.

10             MR. BRAFMAN:  Yes, Judge, but --

11             THE COURT:  I'm not going to deliver your closing

12 argument.

13             MR. BRAFMAN:  I'm not asking you --

14             THE COURT:  You'll do a much better job than I will.

15             MR. BRAFMAN:  I'm not willing to debate that, and I

16 certainly don't want to give a closing argument, but I think

17 from time to time, your Honor, we ask for curative instructions

18 in a trial when something prejudicial is involved.

19             THE COURT:  If I think something needs to be cured, I

20 give a curative instruction.  I've never failed to give a

21 curative instruction, in 23 years of doing this, when I thought

22 something happened that needed to be cured.

23             MR. BRAFMAN:  So I assume that if I were to say, in

24 words or substance, in my opening statement:  You need to wait

25 until you hear the Court's instructions at the end of the

IBSPISSC

trial, but I submit, respectfully, that if I give you a cup of coffee, by itself I may violate the rules of my contract, but it doesn't necessarily mean that I've committed the crime until you hear the instruction.

THE COURT:  And then I will say to the jurors:  Ladies and gentlemen of the jury, you have just heard Mr. Brafman make what is, in essence, a legal argument.  I will tell you what the law is at the end of the case, and you will follow my instructions of law because you have just promised to do that.

I've done it before, and I'll do it again.  That's a curative instruction.

MR. BRAFMAN:  That's why I wanted to front this issue.

THE COURT:  Okay.

MR. BRAFMAN:  So that doesn't happen.  Thank you, your Honor.  I have nothing further, other than --

THE COURT:  Okay, great.

MR. BRAFMAN:  I assume we're going to go over the schedule that the Court --

THE COURT:  Ahh, yes, the schedule.  Okay.  I now remember why I wanted this trial to start this week and not next week.  It's because Chief Judge McMahon's duties during the month of December exceed even her duties during all other months.  So can I get a really solid estimate from the government of how long you think your case is going to take?

MS. HANFT:  Yes, your Honor.  We still think that two

IBSPISSC

1    weeks is a conservative estimate.  We think it's possible --
2              THE COURT:  Conservative?  You're crazy.  You're not
3    going to have seven days to put in testimony.  You're just not
4    going to do it.
5              MS. HANFT:  Again, your Honor, conservatively.  We
6    have discussed several stipulations with defense counsel.  We
7    think that if we are able to agree to them, we will likely rest
8    in fewer days.
9              THE COURT:  How many witnesses are you calling?
10             MS. HANFT:  Approximately 12, your Honor.
11             THE COURT:  That's a four-day trial. In my courtroom,
12   that is a four-day trial.
13             MS. HANFT:  There are several recordings, and we are
14   also --
15             THE COURT:  That's a four-day trial, trust me.  We
16   move in this courtroom.
17             MS. HANFT:  Okay.  Your Honor --
18             THE COURT:  We will have, unfortunately, more
19   interruptions than usual, particularly on Monday, the 10th, but
20   we will be picking a jury on Monday.  I'm going to tell them
21   it's a two-week trial and that they'll be home in plenty of
22   time for the holidays.
23             The minute the jury is picked, should it be picked
24   before the end of the day, I will give instructions and you
25   will be ready to open.  Everybody has to have their witnesses

IBSPISSC

1   here.  If you don't have a witness here and it's before 4:30,
2   the next words out of your mouth had better be "I rest."
3           MR. BRAFMAN:  Judge?
4           THE COURT:  And we don't sit on Fridays.
5           MR. BRAFMAN:  What?  I'm sorry?
6           THE COURT:  We don't sit on Fridays, and we won't be
7   sitting Friday the 7th.  By the 14th, they should be
8   deliberating, if not done.
9           Mr. Brafman, you, of course, have no obligation to
10  tell me anything, but do you anticipate that you might be
11  putting on a case?
12          MR. BRAFMAN:  Yes, and it will be brief.  And I also
13  tell you that we are working diligently with the government to
14  stipulate to as many things as possible --
15          THE COURT:  I'm sure that that's true.
16          MR. BRAFMAN:  -- to shorten the trial.
17          THE COURT:  I have never had it happen otherwise with
18  thoroughly professional counsel.
19          MR. BRAFMAN:  Thank you.
20          THE COURT:  All right.  So I pick a jury using the
21  struck method, which I think is fairest to the parties, fairest
22  to counsel because you always know who your next juror is after
23  you make a strike.  So that means we will get a panel of -- I'm
24  not going to have 80 jurors.  I'm not going to do 80 jurors for
25  a two-week trial with two alternates.  No need to have 80

jurors. You can have 80 people in the room, if you want, but we will start with a group of about 50. 18, 20 of whom will be in the box, 30 of whom will be on the left side back here, and we will examine that group of jurors.

Hopefully, we will not -- I mean, it's holiday season; so a lot of people will, undoubtedly, try to get out of jury service and, hopefully, we'll not have to deal with a lot of those, but things go pretty quickly once we get past that prescreening.

So that will start on Monday. I haven't done the voir dire yet. Thank you for your suggestions. And then pretty much, we go. Let's look at my ridiculous calendar. What? I can't get CEO on this computer. It says the publisher cannot be verified. CEO is our internal calendar. Excuse me while I go down to Mr. O'Neil's.

Okay. I'll have a lunch meeting on Tuesday, but that shouldn't take more than a total of an hour and a half. This is off. Same is true on Wednesday. An hour on Thursday. We're great next week. We don't have serious problems. My worst day for interruptions is Monday, the 10th, but we'll be well into things by then. Oh, Wednesday, the 12th, I have a Second Circuit Judicial Council meeting. That was the other thing why I didn't want to be on trial. That's a mandatory, I have to be, from 12:00 to as long as it takes. I hope it won't take more than a couple of hours, at the Second Circuit

IBSPISSC

1    Judicial Council meeting.  So we'll have a long lunch hour that
2    day.
3            MR. BRAFMAN:  Your Honor, excuse me.  Does that mean
4    that 12-10 we will not be sitting?
5            THE COURT:  No, no, no.  It just means we will have an
6    unusually long lunch hour.  It means we will be quitting early
7    because I have to attend the opening of Judge Katzmann's
8    Justice For All Center on the fifth floor of the old
9    courthouse.  You may have read about it in the newspaper over
10   the weekend.
11           MR. BRAFMAN:  Yes, your Honor.  I was talking about
12   Monday, the 10th.
13           THE COURT:  Monday the 10th, that's what I'm talking
14   about.
15           MR. BRAFMAN:  So we will not be sitting Monday?
16           THE COURT:  We will be sitting.
17           MR. BRAFMAN:  Okay.
18           THE COURT:  We will be much interrupted.  We will be
19   sitting, and we will be interrupted on Wednesday, the 12th
20   because of the Second Circuit Judicial Council.  That will be a
21   long lunch hour.
22           If the jury is deliberating by the 14th, we will be
23   around on Friday, and I'm not going anywhere.  Okay?  All
24   right.  I'm trying to keep these things to a minimum, but it's
25   literally something comes in every day.

IBSPISSC

1   　　　　Okay.  So make sure that Mr. O'Neil has a complete
2   list of names and locations that we should apprise the jurors
3   of.  Make sure we have a complete list of everybody who's going
4   to be at your table so we can introduce you properly, and
5   beyond that, I think we're ready to go.
6   　　　　MR. BRAFMAN:  Yes, your Honor.  I'm sorry.  Go ahead.
7   　　　　MS. HANFT:  One final item, your Honor.  In light of
8   the Court's ruling today, I assume the Court has no objection
9   to our filing our submissions on the docket now, our submission
10  in support of the crimes fraud motion?
11  　　　　THE COURT:  Yes, that's correct.
12  　　　　MS. HANFT:  Thank you okay.
13  　　　　THE COURT:  Indeed, in the event there is no
14  objection, you must.
15  　　　　MR. BRAFMAN:  Your Honor, in light of the Court's
16  ruling, and without waiving our position, I assume that we
17  could still examine Mr. Tsamutulis about how he came to be
18  retained, who retained him and the fact that he was retained
19  under a confidentiality agreement even if the Court views it as
20  no longer a privilege.
21  　　　　THE COURT:  You can certainly ask those kinds of
22  questions, and the jury will consider them for whatever
23  relevance they have, which may be some and maybe none.
24  　　　　MR. BRAFMAN:  Yes, ma'am.  And one final ask.  When
25  your Honor reviews the government's submission with respect to

IBSPISSC

1  voir dire, we're generally in agreement.  We just ask the
2  Court, respectfully, given the nature of the charges, that when
3  you are questioning prospective jurors, the only thing we would
4  ask you to focus on more than normal would be whether any
5  member of their family is employed by the United States Postal
6  Service, has been employed, and I assume your Honor recognizes
7  that.
8             THE COURT:  It is already there.  That part is already
9  there.
10            MR. BRAFMAN:  Thank you.
11            THE COURT:  Okay.  I'll see you Monday.  Great.
12            MR. BRAFMAN:  Thank you.
13            THE COURT:  Fabulous.
14            MS. HANFT:  Thank you, your Honor.
15            THE COURT:  Thank you, all.
16            (Adjourned)