ICi5iss1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          17 Cr. 74 (CM)

 5   IBRAHIM ISSA,

 6                                          Trial
                 Defendant.
 7
     ------------------------------x
 8
                                           New York, N.Y.
 9                                         December 18, 2018
                                           10:15 a.m.
10

11   Before:

12                     HON. COLLEEN MCMAHON,

13                                          District Judge

14                          APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     NOAH SOLOWIEJCZYK
17   ELIZABETH HANFT
     KYLE WIRSHBA
18        Assistant United States Attorneys

19   BRAFMAN & ASSOCIATES, P.C.
          Attorneys for Defendant
20   BY:  BENJAMIN BRAFMAN
          JOSHUA D. KIRSHNER
21        STUART GOLD

22   ALSO PRESENT:   ANTHONY DUBAR, Special agent USPS-OIG
                     GRACE SOTO, Special agent IRS
23                   COLLEEN GEIER, Paralegal Specialist USAO
                     PRIYA KUARLALL PRASAD, Paralegal
24

25
```

ICi5iss1

|    |    |
|----|----|
| 1  | (Trial resumed; jury not present) |
| 2  | THE DEPUTY CLERK:  Case on trial continued. |
| 3  | Government and defendant present, jurors are not present. |
| 4  | THE COURT:  As you see, I don't command the kind of |
| 5  | audience that you people do. |
| 6  | Okay.  Let's do it. |
| 7  | MR. SOLOWIEJCZYK:  Your Honor, while we are waiting |
| 8  | for the jury, we had taken up the issue of the postal rules, |
| 9  | the addition to the charge. |
| 10 | THE COURT:  Yes, and I edited your suggestion. |
| 11 | MR. SOLOWIEJCZYK:  We don't have a copy. |
| 12 | THE COURT:  You don't have a copy? |
| 13 | THE DEPUTY CLERK:  They will have a copy in a second. |
| 14 | You might as well relax, it will be a couple minutes. |
| 15 | MR. BRAFMAN:  Your Honor, could we be a heard for one |
| 16 | moment on this before the jury comes out? |
| 17 | THE COURT:  Case on trial continued, the parties are |
| 18 | present, the jurors are not present. |
| 19 | MR. BRAFMAN:  Your Honor, the instruction that I have |
| 20 | just been given on U.S. Postal Service rules terms of contract |
| 21 | is generally acceptable but I would ask that your Honor add a |
| 22 | sentence at the end that you may not find the defendant guilty |
| 23 | of any of the crimes charged simply because you may have found |
| 24 | him to have violated a postal rule. |
| 25 | THE COURT:  I think I said that in the first sentence. |

ICi5iss1

1    I never want to say anything twice.

2              MR. BRAFMAN:  Note my objection, your Honor.

3              THE COURT:  Thank you.

4              (Continued on next page)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ICi5iss1

1          (Jury present)

2          THE COURT:  Good morning.

3          THE JURY:  Good morning.

4          THE COURT:  We are going to have to wait for Mr. Issa.

5     I apologize about the lunch ordering, by the way.  GSA

6     just terminated our cafeteria contract so they have no

7     incentive to stock for their last week in operation so they

8     have no food.  So, we had to go outside.

9          Okay, you can put your pens down.  You are actually

10    going to have copies of the charge back in the jury room with

11    you.  Okay?  So, just listen.

12         Ladies and gentlemen of the jury, now that you have

13    heard all the evidence in the trial and the arguments made by

14    counsel, it becomes my duty to give you final instructions

15    about the law that's applicable to the case and that will guide

16    you in your decision making.  All of the instructions of law

17    that I have given you throughout the trial, at the beginning of

18    the trial, a few during the trial, and these final

19    instructions, must guide and govern your deliberations.  It is

20    your duty as jurors to follow the law as stated in all of my

21    instructions and to apply these rules of law to the facts as

22    you find them to be from the evidence that was received during

23    the trial.

24         Counsel have referred to some of the applicable rules

25    of law in their closing arguments.  Remember that if what

ICi5iss1

counsel said about the law differs from what I tell you about
the law, are you to follow the instructions given by the Court.
You are not to focus on any single instruction, you have to
consider my charge as a whole in reaching your decision, and
you must not be concerned with the wisdom of any rule of law
that I give you, regardless of any opinion that you may have
about what the law ought to be.  It would be a violation of
your sworn duty to base any part of your verdict on any view or
opinion about the law other than the one I'm going to give you
in these instructions, just as it would be a violation of your
sworn duty as judges of the facts to base your verdict on
anything other than the evidence that was received in the case.

        Now, as I told you at the beginning of trial, the
indictment is not evidence.  That's why you haven't seen it.
It's not evidence.  It merely describes the charges that are
brought against the defendant.  An indictment is simply a
formal method of bringing a case in to court for trial and
determination by a jury.  You may draw no inference of any kind
from the fact that an indictment was handed down.  Under our
law, a person who has been accused of a crime is presumed to be
innocent, therefore you must not consider the fact that the
defendant was accused of crimes in an indictment as evidence of
his guilt.

        The fact that the prosecution is brought in the name
of the United States of America entitles the government to no

ICi5iss1

greater consideration than you would accord to any other party.
By the same token, the government is entitled to no less
consideration.  In your deliberations you are to perform your
duty without bias or prejudice either to the government or to
the defendant.  Remember that all parties, government, and
individuals alike, stand as equals before this court of
justice.

In this criminal case the burden has been, at all
times, on the government to prove every element of the crimes
charged.  That burden never shifted to the defendant.  What did
that mean?  That the defendant had no obligation to prove
anything or call or cross-examine any witnesses or to offer any
evidence.  You and I, as the judges of the fact and the law,
respectively, are presuming the defendant to be innocent so he
has nothing to prove.  The government must convince you that
the presumption is wrong before you can find otherwise and the
government can only convince you that the presumption is wrong
if it proves beyond a reasonable doubt all of the elements of
the crimes charged in the indictment.  Nothing more and nothing
less.

So, the question that naturally arises is what is a
reasonable doubt?  Well, it's a doubt that's based on reason
and common sense that would cause a reasonable person to
hesitate to act in a matter of importance in his or her
personal life.  Proof beyond a reasonable doubt is proof of

ICi5iss1

such a convincing character that a reasonable person would not
hesitate to rely and act upon it in the most important of his
or her own affairs.

Now, a doubt is not reasonable if it's based on
Caprice or whim or on speculation or suspicion, or if it is the
product of sympathy.  And a doubt that you dream up as an
excuse to avoid the performance of an unpleasant duty is not a
reasonable doubt.  A doubt is only reasonable if you arrive at
it based on the evidence or on your conclusion that there is a
lack of evidence.

You will find the fact from one thing only.  The
evidence.  The evidence in this case consists of the sworn
testimony of the witnesses, of all of the exhibits that have
been received regardless of which side introduced them, and all
facts that may have been agreed to or stipulated which you are
to regard as proved.  And some of the those things that were
stipulated were stipulations of testimony -- if called as a
witness, so and so would have said such and such.  You are to
accept that the witness would have said those things on the
witness stand.

Now, nothing I have said during this trial is
evidence.  Nothing any of the lawyers have said is evidence.
The questions they asked by themselves are not evidence.  The
objections that they made are not evidence.  If I sustained an
objection to a question, you have to disregard the question.

ICi5iss1

1    If I ordered testimony stricken -- and I think I did that once

2    or twice -- you must forget that it was ever said.

3           Now, please understand I am neutral in this matter.  I

4    do not decide the issues of fact in this case.  That job is

5    yours and I leave it to you.  My function was simply to get the

6    trial concluded as fairly and as promptly as possible -- I

7    apologize that it wasn't as prompt as I thought it would be --

8    and to explain the law to you.  The decision in the case is

9    yours so don't get any idea that I have a view or an attitude

10   about what your verdict should be.  I do not.  Your verdict

11   will be my verdict.

12          In making your evidence-based findings you are

13   permitted to draw reasonable inferences from the facts that

14   have been proved from the testimony and the exhibits.

15   Inferences are simply deductions or conclusions that reason and

16   common sense lead you to draw from the evidence received in the

17   case.  You should consider the evidence at this trial in the

18   same way that any reasonable and careful person would treat any

19   very important question that involves facts and opinions and

20   evidence to support them.  You are expected to use your good

21   sense in considering and evaluating the evidence in the case

22   only for the purposes for which it has been received and to

23   give that evidence a reasonable and fair construction in light

24   of your common knowledge of the natural tendencies and

25   inclinations of human beings.

ICi5iss1

I remind you there are two types of evidence that you may properly consider in deciding whether the defendant has been proved guilty or whether he is not guilty.  One type of evidence is called direct evidence.

Direct evidence is evidence given by a witness who testified about what she saw, heard, observed of her own knowledge acquired by virtue of her five senses.

Circumstantial evidence is direct evidence of one fact that tends to give rise to an inference of another fact.  The simple example of circumstantial evidence that is often used in courts, assume that when you came into the court house this morning the sun was shining -- as, indeed, it is shining right now -- and it is a nice day, but let's assume there actually are no windows in this courtroom so we can't see outside, and this building is soundproof so we can't hear outside, so we would have no way of knowing whether the weather had changed. But if, as we sit here this morning, people arrive, having business with the Court and they walk into the room and they're carrying wet umbrellas and their hair is plastered down on their heads, we would have no direct evidence that the weather had changed but we would have direct evidence that it looked like those people had come in from out of the rain.  From that we could conclude, we could draw the inference, that the weather had changed.  So, the appearance of the people is circumstantial evidence of a change in the weather.  Okay?

ICi5iss1

That's all circumstantial evidence is, you infer from an established fact the existence or the nonexistence of some other fact on the basis of your reason, experience, and common sense.

Now, circumstantial evidence is of no less value than direct evidence and it is a general rule that the law makes no distinction between direct and circumstantial evidence. It simply requires that before you convict a defendant you, the jury, must be satisfied of his guilt beyond a reasonable doubt from all of the evidence in the case.

Now, recordings of telephone conversations, text messages and e-mails have been admitted into evidence. I instruct you that this evidence was obtained in a lawful manner and no one's rights were violated and the government's use of this evidence is entirely lawful. Therefore, regardless of any personal opinion or feelings that you might have about how that evidence was obtained, you should give it full consideration, along with all the other evidence in the case as you decide whether the government has proved the defendant's guilt beyond a reasonable doubt. What weight you give to these materials, if any, is completely within your discretion.

The government also introduced evidence in the form of video/audio tape recordings of conversations between the defendant and others. The use of these tape recorded conversations is also perfectly lawful. Both parties were

ICi5iss1

1    entitled to use the tape recordings in this case.  Whether you

2    approve or disapprove of the recording of conversations or

3    meetings may not enter into your deliberations.  So, regardless

4    of any personal opinions you may have about how this evidence

5    was gathered, you should give it full consideration, along with

6    all the other evidence in the case as you determine whether the

7    government has proved beyond a reasonable doubt the guilt of

8    the defendant.

9         For several of the recordings you were provided with

10   simultaneous transcriptions on your monitors to assist you.  I

11   remind you the transcriptions are not evidence and that's true

12   of all those transcripts that you had as well.  The transcripts

13   and transcriptions were provided as an aid to you while you

14   listened to or watched the recordings.  It is for you to decide

15   whether the transcriptions correctly present the conversations

16   as they are heard on the recordings.  And if you perceive any

17   difference between the recording and the transcription, it's

18   what you hear on the recording that controls.

19        Now, among the evidence we received in evidence we

20   have a few documents that have been redacted.  What that means

21   is part of the document has been blacked out.  Material can be

22   redacted for any number of reasons including that I decided it

23   was not relevant to the issues you have to decide in the case,

24   or that it invades the privacy of a third-party, or there are a

25   whole variety of reasons why we could redact information.  You

ICi5iss1

are not to concern yourself with why a document was redacted, you are only to concern yourself with the part of the item that was admitted into evidence.

You, the jurors, will be the sole judges of the credibility -- the believability -- of the witnesses.  And you will give the weight that their testimony deserves.  You may be guided in your assessment by the appearance and the conduct of a witness or by the manner in which he or she testified, or by the character of the testimony that's given, or by evidence you find to be believable that's contrary to the testimony that was given.

You should carefully scrutinize all the testimony that you heard, the circumstances under which each witness testified, and every matter in evidence that might tend to show whether a witness' testimony is worthy of belief.  Consider each witness' intelligence, motive, state of mind, and demeanor or manner while on the stand.  Consider the witness' ability to observe the matters about which he or she testified and whether he or she impresses you as having an accurate recollection of those matters.  Consider any relation that each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which, if at all, each witness' testimony is supported or contradicted by other evidence in the case.

Now, inconsistencies or discrepancies within the

ICi5iss1

testimony of a witness may cause you to discredit that person's
testimony, or may not.  So may inconsistencies between witness
no. 1 and witness no. 2.  But inconsistencies do not
necessarily indicate that someone is lying.  Two or more
persons who witness an incident or a transaction may see or
hear it differently.  An innocent misrecollection, like failure
of recollection, is not an uncommon experience.  So, in
weighing the effect of a discrepancy, consider whether it
pertains to a matter of importance or to an unimportant detail
and whether you believe it results from innocent error or
intentional falsehood.  After making your own judgment, you
should give the testimony of each witness such weight, if any,
as you think it deserves.

           Now, you heard evidence that a witness at some earlier
point in time made an out-of-court statement that was
inconsistent with what the witness said during the trial.
Statements made by witnesses in the past are not the evidence
in the case.  The evidence in the case is what the witness says
from the witness stand.  So, why do lawyers ask witnesses if
they make specific statements at some earlier point in time?
Well, they do it because if the witness told a different story
in the past, that might help you to decide whether to believe
the witness' trial testimony.  It is for you to decide whether
a witness' prior statement actually conflicts with his trial
testimony.  Sometimes lawyers see conflicts where jurors do

ICi5iss1

not.  If you decide there is a conflict between what a witness

said on some prior occasion and what he or she told you at

trial, you may consider the fact that there is an inconsistency

as you decide whether you believe what the witness told you

here at trial.  You may not consider the contents of the prior

statement for their truth or substitute the prior inconsistent

statement for the trial testimony even if what the witness said

in the past seems more believable to you.  The prior

statement's only relevance lies in assessing whether you

believe what the witness said here at the trial.

Let me give you a silly example to illustrate the

point.  Let's assume that the government has to prove beyond a

reasonable doubt the color of a car that was involved in a car

crash.  Suppose a witness testified here at trial the car was

blue, and suppose that on cross-examination opposing counsel

confronted the witness with a statement he made to the police

on the night of the accident in which he said the same car was

gray.  You may, if you wish, consider the fact of that

inconsistency, the fact that the witness told different stories

at different times as bearing on his credibility.  You may not,

however, decide that the car was gray but the witness said so

on an earlier occasion.  That's because the prior statement was

not admitted to prove the truth of the matter asserted, the

color of the car.  The only evidence before you about the color

of the car is that it's blue.  Either you believe the witness,

ICi5iss1

you believe what he said here in court, or you don't.

In making your credibility determination you should consider whether the witness purposefully made a false statement or whether it was an innocent mistake, whether the inconsistency concerns an important fact or has to do with a small detail whether the witness had an explanation for the inconsistency and whether that explanation appealed to your common sense.

It is your duty, based on all the evidence and your own good judgment, to determine whether the prior statement was inconsistent and, if so, how much, if any weight, to give to the fact of the inconsistency as you decide whether you believe all or part of what the witness said to you here at trial.

Now, the government must sometimes rely on the testimony of witnesses who admit to participating in crimes and who agree to cooperate in the hope of he receiving leniency at sentencing. There is nothing wrong with the government's use of cooperating witnesses so you may consider the testimony of such witnesses.

In federal court, the testimony of a single cooperating witness may be enough to satisfy you of the defendant's guilt beyond a reasonable doubt. However, cooperating witness testimony should be scrutinized with great care and viewed with particular caution when you decide how much of it to believe. You are allowed to consider the fact

ICi5iss1

1    that a witness is cooperating with the government and is hoping

2    for leniency as you decide whether or not you believe that

3    witness' testimony.  It does not follow that a person who has

4    admitted to participating in crimes is incapable of giving

5    truthful testimony.  Like the testimony of any other witness,

6    cooperating witness testimony should be given such weight as it

7    deserves in light of all the facts and circumstances taking

8    into account the witness' demeanor and candor, the strength and

9    accuracy of his recollection, his background, and the extent to

10   which the testimony is or is not corroborated by other evidence

11   in the case.

12           You also heard testimony about agreements between the

13   government and the cooperating witness.  It is no concern of

14   yours why the government made an agreement with anyone.  Your

15   sole concern is whether the witness has given truthful

16   testimony here in this courtroom before you.  That said, when

17   you are determining a witness' credibility, you may consider

18   the existence of the agreement and any effect that you think it

19   had on the witness' truthfulness.  In evaluating the testimony

20   of cooperating witnesses, you should ask yourselves whether

21   that person would benefit more by lying or by telling the

22   truth.  Was the witness' testimony made up in any way because

23   the witness believed or hoped that he would somehow receive

24   favorable treatment by testifying falsely?  Or did the witness

25   believe that his interests would be served best by testifying

ICi5iss1

truthfully?

         If you believe that a witness is motivated by the hope
of personal gain, was the motivation one that would cause the
witness to lie, or was it one that would cause him or her to
tell the truth?  And, did the motivation actually color the
witness' testimony?  If you find that the testimony of the
cooperating witness was false, you should reject it.  However,
if, after cautious and careful examination of the cooperating
witness' testimony and that witness' demeanor on the stand, you
are satisfied that the witness told the truth, you are free to
accept his testimony as credibility and act on it accordingly.

         Mr. Velez, the cooperating witness in this case,
pleaded guilty to charges arising out of the same facts that
are at issue in this case.  You may not draw any conclusion or
inference of any kind about the guilt of the defendant from the
fact that Mr. Velez pleaded guilty to similar charges.  The
decision of any person to plead guilty is a personal decision
that I made about his own guilt.  Nobody else's plea is
evidence against Mr. Issa.  So, you may not consider or draw
any conclusion about Mr. Issa's guilt based on the fact that
the cooperating witness pled guilty.

         You heard testimony from two witness -- Sohail Butt
and Claudia Betancourt -- who testified under a grant of
immunity that was conferred by the Court.  The testimony of a
witness testifying pursuant to a grant of immunity may not be

ICi5iss1

used against that witness in any criminal case except in a

prosecution for perjury, if giving false statements in

connection with testimony.

          There is nothing wrong with the government's eliciting

testimony from a witness who has been granted immunity to

testify and a defendant may be convicted on the basis of such

witness' testimony alone provided, of course, the jury

concludes that the witness' testimony proves the defendant

guilty beyond a reasonable doubt.  That said, you should

scrutinize the testimony of a witness who has been granted

immunity with great care.  You must decide whether or not it is

colored in such a way as to place guilt upon the defendant in

order to further the witness' own interests, or such a witness

confronted with the realization that he could avoid being

charged with a crime by helping to convict another, has a

motive to testify falsely.  However, if you believe the

testimony to be true and determined to accept the testimony,

you may give it such weight, if any, as you believe it

deserves.

          You have heard testimony from witnesses whom the

government has promised in exchange for testifying truthfully,

completely, and fully, will not be prosecuted for any crimes in

which they may have participated.  Again, the fact that the

government has agreed not to prosecute a witness does not

disqualify him from testimony or from testifying and does not

ICi5iss1

1    preclude you from accepting that testimony as true because the

2    government is permitted to make these kinds of promises called

3    non-prosecution agreements, and it is entitled to call as

4    witnesses people to whom such promises are made.  The fact that

5    the government has agreed not to prosecute a witness does not

6    disqualify him or her from testifying.  And, we don't need to

7    say that twice.

8            You are instructed that you may convict the defendant

9    on the basis of such a witness' testimony if you find that his

10   or her testimony proves the defendant guilty beyond a

11   reasonable doubt.  So, in evaluating the testimony of witnesses

12   who are testifying pursuant to non-prosecution agreements, you

13   may want to consider whether the witness would benefit more by

14   lying or telling the truth.  If you believe the witness is

15   motivated by personal gain, was the motivation one that would

16   cause him to lie or one that would cause him to tell the truth?

17   Again, if you find the testimony to be false, you should reject

18   it and if you are satisfied that the witness told the truth,

19   you should accept it.

20           One final note.  As I have said before, it is no

21   concern of yours why the government made any kind of agreement

22   with a witness.  Your sole concern is deciding whether the

23   testimony that was given by that witness was truthful and you

24   should look to all the evidence in the case in deciding what

25   credence and what weight, if any, you will give to a witness'

ICi5iss1

testimony.

         I will say that somewhere else, I am trying not to say
things two or three times.

         You have heard evidence during the trial that the
witnesses have discussed the facts of the case and their
testimony with the lawyers before they appeared in court.
There is nothing either unusual or improper about a witness'
meeting with lawyers -- in this case the government lawyers --
before testifying.  It happens all the time.  That way the
witness can be aware of the subjects he will be questioned
about, focus on those subjects, and have the opportunity to
review relevant exhibits before being questioned about them.
Such consultation helps conserve your time and the Court's.
The weight that you give to the fact that a witness prepared
for his or her testimony, if any, is a matter entirely within
your discretion.

         Now, if you find that any witness testified falsely
about some material fact, the law permits you to disregard
everything that the witness said on the stand.  Put otherwise,
if someone lies to you about a fact that you deem to be
important to this case, you can just throw out that witness'
entire testimony on the ground that someone who lies to you
about one important thing cannot be trusted, at all.  However,
the issue of credibility need not be decided in an all or
nothing fashion.  You may accept as much of a witness'

ICi5iss1

testimony as you think is true and disregard whatever you feel

is false.  It's entirely up to you how you treat the testimony

of such a witness.

          There is no legal requirement that the government

prove its case through any particular means so while you are to

consider carefully the sufficiency of the evidence introduced

by the government, you are not to speculate about why it used

the techniques that it did or why it did not use other

techniques.  The government is not on trial and law enforcement

techniques are not your concern.  Your concern is to determine

whether or not, on the evidence or lack of evidence, the guilt

of the defendant has been proved beyond a reasonable doubt.

          Now, Mr. Issa did not testify in this case.  Under our

Constitution, a defendant has no obligation to testify or to

present evidence because it is the government's burden to prove

the defendant guilty beyond a reasonable doubt and that burden

remained with the government throughout the entire trial, it

has never shifted to the defendant.  Just remember that.  A

defendant is never required to prove that he is innocent.  So,

you may not attach any significance to the fact that the

defendant did not testify.  You may not draw any adverse

inference against Mr. Issa because he did not take the witness

stand.  You may not consider this against the defendant in any

way in your deliberations in the jury room.  You should put the

fact that he did not testify entirely out of your mind.  It's

ICi5iss1

irrelevant.

In reaching your decision as to whether the government has sustained its burden of proof, it would be improper for you to consider any personal feelings you might have about the defendant's race, religion, national origin, sex, age, or station in life.  It would be equally improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process.  Any sort of bias, prejudice, or sympathy for or against either side has no relevance to the matter before you and may not be considered by you in reaching your verdict.

You also may not draw any inference, favorable or unfavorable, toward the government or the defendant from the fact that any person other than the defendant is not on trial here.  You may not speculate about the reason why other people are not on trial.  Those matters are wholly outside your concern.  They have no bearing on your function as jurors. This is Mr. Issa's day in court.

Finally, the question of what punishment the defendant might incur if he is convicted is of no concern to the jury and so it should not enter into or influence your deliberations. The duty of imposing sentence rests exclusively with me.  Your function is to tell me whether I have to exercise that duty by weighing the evidence and determining whether the defendant has been proved guilty beyond a reasonable doubt solely on the

ICi5iss1

basis of that evidence.

          Stand up, stretch.

          Now, are you being asked to consider a total of eight
separate charges.  Counts One and Two charge the defendant with
bribery of a federal official and theft of government funds,
respectively.  Count Three charges the defendant with
conspiracy to commit various tax offenses.  And, Counts Four
through Eight charge the defendant with actually committing
various substantive tax crimes.

          You must consider each count separately and you must
return a separate verdict of guilty or not guilty on each
count.  I have a verdict sheet.  If you need any reinforcement
for this you have to have a verdict on Count One, a verdict on
Count Two, a verdict on Count Three.  You consider each one
separately.  And when I say "each one separately," what I mean
is your verdict on Count One doesn't determine what your
verdict is on Counts Two, Three, and Four.  All right?  Your
verdict on Count One is your verdict on Count One.  Then you
will consider the evidence on Count Two.  So, whether you find
the defendant guilty or not guilty as to any one charge should
not affect your verdict on the other offenses that are charged.

          Now, I plan to charge you first on the law of bribery
and theft of government funds in connection with Counts One and
Two.  Then we will actually take a break.  Then you will come
back, then I'm going to jump over Count Three, which is the

ICi5iss1

conspiracy count, and talk to you about the law that relates to

the substantive tax offenses that are charged in Counts Four

through Eight and then I will charge you last on conspiracy.

So, the first count charges the defendant with the

crime of bribery of a federal official.  In order to find the

defendant guilty of that crime, the government has to prove

three elements beyond a reasonable doubt.  The first element

that the government must prove beyond a reasonable doubt is

that the defendant offered, promised, or gave money or

something else of value to one or more of the following

individuals:  United States Postal Service Vehicle Maintenance

Facility managers James Nicholson, Jeffrey Blight, or Ismael

Velez.  The item of value that was offered, promised or given

can consist of money or something else of value such as meals,

travel, property, services, other items that have value.

The bribery statute makes no distinction between

offering, promising, and giving a bribe.  All are crimes.  The

mere offer or prompts of a bribe is just as much of a violation

of the statute as the actual giving.

The second element that the government must prove

beyond a reasonable doubt that any of the three United States

Postal Service Vehicle Maintenance Managers -- James Nicholson,

Jeffrey Blight and Ismael Velez -- were public officials.  The

term "public official"means a member of Congress or an officer

or employee or person who is acting for or on behalf of the

ICi5iss1

United States, or any department, agency, or branch of the United States government in any official function under or by the authority of any such department, agency, or branch of government.  So, the term public official includes any employee of the United States Government, as well as any person who is performing work for or acting on behalf of the United States government.

The third element that the government must prove beyond a reasonable doubt is that the defendant gave, promised, or offered the money or the thing of value with the corrupt intent to influence an official act that was to be taken by that public official.  Corrupt intent means having an improper motive or purpose, it involves conscious wrongdoing by the defendant or, as it has sometimes been expressed, that the defendant had a bad or an evil state of mind.

Now, bribery of a public official does not occur if a person simply gives a thing of value to a public official merely as an effort to curry amorphous favor or obtain generalized goodwill from a public official who has been or may at some unknown time be in a position to act favorably on the donor's interest.  That describes lobbying and lobbying is legal.

Corrupt intent in this context means an intent by the defendant to engage in a *quid pro quo*, a Latin phrase meaning this for that, or these for those.  A specific intent to give

ICi5iss1

1    or receive something of value in exchange for an official act.

2    The agreement need not be explicit and the public official need

3    not specify the means that he will use to perform his end of

4    the bargain.  You do not need to find that the defendant's

5    intent was entirely corrupt.  If you find that the government

6    has proven beyond a reasonable doubt that the defendant

7    provided USPS officials with payments, the defendant may be

8    found to have the requisite corrupt intent even if he possessed

9    a dual intent.  That is partly corrupt and partly innocent.  A

10   valid purpose like friendship that partially motivates a

11   payment does not insulate the defendant from an unlawful

12   transaction if any part of his motivation was corrupt.

13          But, by the same token, the government must prove

14   beyond a reasonable doubt that some part of the defendant's

15   motive was corrupt.  In considering this element, remember that

16   it is the defendant's intent to influence the public official's

17   actions, not the subsequent actions of the public official

18   that's important.  So, the government does not have to prove

19   that the public official accepted the bribe or that he

20   performed the act sought, or that the official ever intended to

21   perform the act sought.  Moreover, this element may be

22   satisfied even if the public official would have taken the same

23   official act if he never got a bribe or even if the public

24   official did not take the official fact that was sought.

25          Similarly, this element would be satisfied even if the

ICi5iss1

action taken by the public official was a desirable action or
one that was beneficial to the public.  A bribe is unlawful
even if the public official would have and should have taken,
in the public interest, the same action for which the bribe was
offered or paid.

          Now, I have used the term official act a number of
times.  An official act means any decision or action on any
question or matter that may, at any time, be pending or that
may, by law, be brought before any public official in his
official capacity or place of trust.  The term official act
includes the decisions or actions that are generally expected
of a public official.  These decisions or actions do not need
to be specifically described in any law, rule, or job
description to be considered an official act.

          Now, not every action taken by a public official
qualifies as an official act.  Some examples of actions that
are not official acts are setting up a meeting, talking with a
lobbyist or another official, organizing an event, expressing
support for an idea.  Without more, those kinds of activities
do not constitute official acts, although such activity may be
evidence of an agreement to take official acts or to advise or
pressure another official to do so.

          An official act must involve a decision, an action, or
an agreement to make a decision or to take action on a specific
matter.  A decision or action may include using one's official

ICi5iss1

position to exert pressure on or to order someone else to

perform an official act.  It may also include using one's

official position to provide advice to another knowing or

intending that such advice will form the basis for an official

act by another.  The decision or action must be made on a

question or matter that involves a formal exercise of

governmental power.  This means the question or matter must be

specific, focused, and concrete, the kind of thing that could

be put on an agenda and then checked off as complete.  It must

be something that may, by law, be brought before a public

official or may, at some time, be pending before that public

official.  The government does not have to prove that at the

time of the payment the public official promised to perform the

particular act.  It is sufficient that the defendant intended

that the public official would, as a result of the payment,

take official acts as specific opportunities arose.

          Okay, that's Count One.

          Count Two charges that the defendant engaged in theft

of government funds by fraudulently billing the United States

Postal Service for vehicle repair maintenance and towing work

that was not actually performed, billing the USPS for vehicle

maintenance work that was not necessary and had not been

requested, and billing the USPS more than once for the same

work.

          There are four elements to this charge that the

ICi5iss1

government must prove beyond a reasonable doubt.  The first

element that the government must prove beyond a reasonable

doubt is that money or property that the defendant Issa

received from the USPS belonged to the United States

government.  Now, there isn't any dispute in this case that the

money that Issa's companies received from the USPS as a result

of their vehicle repair maintenance and towing work on USPS

vehicles qualifies as money belonging to the United States.

You don't have to deliberate on that element.

The second element the government must prove beyond a

reasonable doubt is that the defendant stole or knowingly

converted money or property belonging to the United States

government.  To steal money or property means to take someone

else' money or property without the owner's consent with the

intent to deprive the owner of the value of that money or

property.

To knowingly convert money or property means to use

the property in an unauthorized manner in a way that seriously

interferes with the government's right to use and control its

own property knowing that the property belonged to the United

States and that such use was unauthorized.  To act knowingly

means to act intentionally and voluntarily, not because of

ignorance, mistake, accident, or carelessness.

The third element the government must prove beyond a

reasonable doubt under Count Two is that the defendant acted

ICi5iss1

knowingly and willfully with the intent to deprive the

government of the use and benefit of its property.  Again, to

act knowingly means to act intentionally and voluntarily, not

because of ignorance, mistake, accident, or carelessness.

          To act willfully means to act with the knowledge that

one's conduct is unlawful and with the intent to do something

that the law forbids.  That is to say with a bad purpose, to

disobey or to disregard the law.  Whether the defendant acted

knowingly and willfully may be proven by the defendant's

conduct in all of the circumstances of the case.

          The fourth and final element that the government must

prove beyond a reasonable doubt for Count Two is that the value

of the property stolen from the government, here the funds that

were paid by the USPS to Mr. Issa's companies for vehicle

repair maintenance and towing work that the government alleges

was either not performed or not authorized, was greater than

$1,000.  In determining the value of property stolen you may

consider the aggregate or the total value of the property

referred to in Count Two.  If you find that the aggregate value

is $1,000 or less, then you must find the defendant not guilty

on Count Two.  On the other hand, if you find the aggregate

value to be greater than $1,000, then this element is

satisfied.

          Okay.  I would like to take a short break, a

five-minute break.  All right?  But to get you up moving out so

ICi5iss1

1    I can clear my head before we go on to the tax stuff which I

2    find to be a little more complicated.

3              So, don't discuss the case, keep an open mind.

4              (Continued on next page)

ICi5iss1

```
 1              (Jury not present)
 2              THE COURT:  I have a question.  Does the jury -- I
 3      think the jury has to be unanimous on which official was
 4      bribed, right?  That isn't in this charge and I think I need to
 5      tell them that.
 6              MR. SOLOWIEJCZYK:  Can we have one moment, your Honor?
 7              THE COURT:  Yes.  I don't think if six of them think
 8      it was this one and six of them think it was that one that
 9      that's enough.
10              (Counsel conferring)
11              MR. SOLOWIEJCZYK:  If you could give us five minutes,
12      your Honor, we are going to check.
13              THE COURT:  That's why we are having a five-minute
14      break.
15              MR. SOLOWIEJCZYK:  Of course.
16              (recess)
17              THE DEPUTY CLERK:  Case on trial continued.
18      Government and defense present, jurors are not present.
19              THE COURT:  What did you find in your five-minute
20      break?
21              MS. HANFT:  Your Honor, the government's view is that
22      it is not a hundred percent clear and so we --
23              MR. BRAFMAN:  I can't hear you.
24              MS. HANFT:  We have no problem with the Court saying
25      that the particular public official, the jury needs to be
```

ICi5iss1

1    unanimous as to that, but the Court needs to make clear that

2    the particular means by which the bribe happened --

3               THE COURT:  I'm not making anything clear.  I am

4    asking you one question.

5               MS. HANFT:  I understand, your Honor.

6               THE COURT:  I asked you if I should say one thing.

7               MS. HANFT:  I understand that, your Honor.  So, I

8    think our view is that it is fine.  We have no objection to the

9    Court saying that they need to be unanimous as to the official.

10              MR. BRAFMAN:  Your Honor, we would object to that.

11   You have given them an instruction that already said that they

12   have to be unanimous beyond a reasonable doubt as to whether

13   the defendant bribed anyone and you have already told them that

14   so long as they decide --

15              THE COURT:  Mr. Brafman, if you don't want the

16   instruction my lips are sealed.

17              MR. BRAFMAN:  Thank you.

18              THE COURT:  I just don't understand how you can

19   possibly -- I am very uncomfortable with that because if -- if

20   six of the jurors thought that Mr. Nicholson was bribed and six

21   of the jurors thought that Mr. Velez was bribed but not

22   Mr. Nicholson, in a drug case I would say you have to be

23   unanimous about the type of drugs.  I failed to see how you

24   cannot have to be unanimous about who got the bribe.

25              MR. BRAFMAN:  You convinced me, your Honor.

ICi5iss1

1          MR. SOLOWIEJCZYK:  So, you want it?

2          THE COURT:  I just think that is weird.

3          MR. SOLOWIEJCZYK:  So he now wants it?

4          MR. BRAFMAN:  We are not doing a special verdict.

5          THE COURT:  No, we don't have to have a special

6     verdict sheet but they have to be told.

7          MR. BRAFMAN:  Thank you, your Honor.

8          MS. HANFT:  Your Honor, at risk of raising the same

9     issue again, what I was pointing out is that they need not be

10    unanimous as to the particular thing of value.

11         THE COURT:  Excuse me.  I asked you one question.

12         MS. HANFT:  I understand, your Honor.

13         THE COURT:  One question.  Okay.  So, let's bring the

14    jurors back in.

15              (Continued on next page)

16

17

18

19

20

21

22

23

24

25

ICi5iss1

1          (Jury present)

2          THE COURT:  I'm sorry.  People are having difficulty

3  hearing me?  That is rarely the case but if you are having

4  difficulty hearing me, let me know.  Okay.  Have a seat.

5          One reason that they may be having difficulty is that

6  my mic is not on.

7          THE DEPUTY CLERK:  That's on me.

8          THE COURT:  But, gee, it would be a first.

9          All right.  I'm going to take you back to the very

10  first element of Count One, which is where the government must

11  prove beyond a reasonable doubt that the defendant offered,

12  promised, or gave money or something of value to one or more of

13  Mr. Nicholson, Mr. Bright, and Mr. Velez.  Now, it is enough

14  that the government prove that something was delivered, offered

15  or given to one of them, but you have got to be unanimous about

16  if it is less than all three, you have to be unanimous about

17  which one.  Okay?  You have to be unanimous about at least one

18  person.  So, in order to reach a unanimous verdict it would not

19  be sufficient if six of you were to conclude that the

20  government had proved that the defendant offered, promised, or

21  gave something of value to Mr. Velez but not to Mr. Nicholson

22  or Mr. Blight, and the other six of you concluded that the

23  government had proven beyond a reasonable doubt that the

24  defendant offered, promised, or gave something of value to

25  Mr. Blight but not Mr. Nicholson or Mr. Velez.  All 12 of you

ICi5iss1

have to agree that the defendant offered, promised, or gave
money or something of value to at least one person and you all
agree as to the same person, in order for the government to
prove the first element.  Okay?

          Having clarified that, let's move on to the tax part.

          Now, Count Four charges that the defendant attempted
to evade and defeat a substantial part of the tax due and owing
for the 2012 tax year for First Star Auto Repair, Inc.  The
crime of tax evasion has four elements.  The first element of
the offense which the government must prove beyond a reasonable
doubt is that the taxpayer, in this case First Star Auto
Repair, Inc., owed substantially more federal income tax for
the calendar year 2012 than was declared on its income tax
return.  The government does not have to prove that the
defendant attempted to evade or defeat payment of all the taxes
that were owed for the 2012 tax year, nor does the government
have to prove the exact amount that First Star owed in taxes.
The government need only prove that the amount actually owed by
First Star for the year 2012 was substantial and that the
defendant attempted to evade or defeat all or a substantial
part of the taxes that First Star owed.

          Whether the amount of tax due is substantial is an
issue for you to decide.  Substantiality is not measured in
terms of gross or net income or by any particular percentage of
the tax that is shown to be due and payable.  All of the

ICi5iss1

attendant circumstances must be taken into consideration.  A
few thousand dollars of evaded tax money may, in a given case,
be considered substantial depending on the circumstances.

So, to prove that a substantial tax was due, the
government must prove beyond a reasonable doubt two things:

First, that the taxpayer, here, First Star, received
substantial unreported income; and second, that there was tax
due or additional tax due as a result of the receipt of that
unreported income.  In reaching your decision on whether First
Star owed substantial federal income taxes for the year 2012
you should consider, along with all the other evidence, the
testimony and exhibits that were introduced during the trial
concerning the computation of the taxpayer's liabilities.  If
you find, based on all the evidence, that the government has
established beyond a reasonable doubt that First Star received
unreported income and that as a result of that income there was
a substantial amount of tax due and owing, then the first
element is satisfied.

The second element of the tax evasion offense that the
government must prove beyond a reasonable doubt is that the
defendant committed an affirmative act constituting an evasion
or an attempt to evade or defeat income taxes.

The phrase attempt to evade or defeat income tax
involves two things.  First, the formation of an intention, a
conscious aim or objective to evade or defeat a tax or the

ICi5iss1

payment thereof; and second, willfully performing some act to accomplish the intent to evade or defeat the tax.

Count Four alleges that the defendant knew and believed that for the 2012 tax year First Star Auto Repair, Inc., had substantial taxable income upon which there was substantial amount of tax due and owing and that the defendant tried, in some way, to evade the assessment of a substantial portion of the tax that was due and owing. Therefore, in order to prove Count Four the government must prove beyond a reasonable doubt that for the year charged -- 2012 -- the defendant both intended to evade or defeat the tax that was due and that he willfully committed some act or caused some act to be committed that was designed to misrepresent or conceal his income -- I should say First Star's income from the IRS.

There are many different ways that one may evade or try to evade a tax. The statute, Section 7201 of the United States Code, provides that the attempt can be in any manner. A general rule is that any conduct, the likely effect of which would be to mislead or conceal for tax evasion purposes, is sufficient to establish an affirmative act of attempting to evade or defeat income taxes. The only requirement is that the defendant must take some affirmative act with that purpose in mind.

Now, the mere failure to do what the law requires is not an affirmative act. Failing to file an income tax return

ICi5iss1

and failing to pay income taxes, standing alone, are not
sufficient by themselves to make out the affirmative act of
attempting to evade or defeat taxes.  The defendant has to do
something more in order to be guilty of tax evasion.  The
defendant must engage in some affirmative conduct that is
likely to mislead the government or to conceal taxable income
from the government.  Even a lawful act can constitute an
attempt to evade and defeat if that act is performed by the
defendant with the intent to evade or defeat income tax.

        Conduct that constitutes or is sufficient to establish
an affirmative attempt to evade a tax includes -- not limited
to but includes the making of false and misleading statements
to the IRS, the filing or causing to be filed of false tax
returns or forms with the IRS, failing to report income, the
use of corporate entities to pay personal bills, placing
ownership of companies in the names of others, dealing
extensively in cash, or any other conduct the likely effect of
which would be to mislead or to conceal including directing
other individuals to do any of the things I just mentioned.

        Although the government must prove that the defendant
committed some affirmative act constituting an attempt to
evade, it need not prove each act of evasion that is alleged in
the indictment, proof of one affirmative act is enough.  You
must all agree -- 12 people must agree -- on at least one
affirmative act that the defendant commit in order to satisfy

ICi5iss1

this element.

          The third element the government must prove beyond a
reasonable doubt is that the defendant acted knowingly and
willfully.  To show that the defendant acted knowingly the
government must prove beyond a reasonable doubt that the
defendant knew that the taxpayer, here First Star Auto Repair,
Inc., owed a substantial amount of taxes for the year 2012.
Whether or not the defendant had this knowledge is a question
of fact to be determined by you on the basis of all the
evidence.  As I have previously instructed you, an act is done
knowingly only if it is done purposely and deliberately and not
because of a mistake or accident or negligence or some other
innocent reason.

          The government must also prove, beyond a reasonable
doubt, that the defendant acted willfully.  In this context the
word willful connotes a voluntary and intentional violation of
a known legal duty.  In order for the government to prove the
crime charged it must establish beyond a reasonable doubt that
the defendant acted voluntarily and intentionally with the
specific intent to keep from the government a tax imposed by
the tax laws which it was the legal duty of the defendant to
pay in which the defendant knew it was his legal duty to pay.
Mere negligence, even gross negligence, is not sufficient to
constitute willfulness.

          Now, because the government must prove that the

ICi5iss1

defendant knew that the taxpayer, here First Star Auto Repair,

had a legal duty to pay, if the defendant believed in good

faith that First Star Auto did not owe the taxes that the

government claims it does, then the defendant can't be guilty

of criminal intent to evade taxes.  So, if you find that the

defendant honestly and genuinely believed that First Star Auto

owed no additional taxes for the year 2012, even if you think

that belief was unreasonable or irrational, then you must find

him not guilty.

　　　　However, neither the defendant's disagreement with the

law nor his own belief that the law should not apply to him, or

that it's unconstitutional no matter how earnestly that belief

is held, is a defense of good faith, misunderstanding or

mistake.  It is the duty of all citizens to obey the law

regardless of whether they agree with it.  Good motive is

irrelevant if the defendant knows of his duty, under the law.

　　　　The defendant does not have the burden to establish

his good faith.  Why?  Because the defendant has nothing to

prove.  It is the government's burden to prove that the

defendant did not have a good faith misunderstanding of the

law.  The burden of establishing lack of good faith and the

existence of criminal intent rests on the prosecution which it

must prove it beyond a reasonable doubt.

　　　　In determining whether the defendant acted in good

faith or whether he willfully attempted to evade or defeat the

ICi5iss1

1   taxes, you are entitled to consider all of the evidence that

2   bears on his state of mind and then you, as jurors, draw your

3   own inferences as you think they are warranted by the evidence.

4   Obviously, knowledge and intent are matters that exist in the

5   mind and science has not yet devised a way to permit us to

6   enter into a person's mind and to know exactly what he is

7   thinking.  Therefore, knowledge and intent are rarely, if ever,

8   proved by direct evidence but direct evidence is not required

9   because circumstantial evidence may be relied on and such

10  evidence may be given the same weight as direct evidence.  The

11  intent with which an act is done is often more clearly and

12  conclusively shown by the act itself, or by a series of actions

13  rather than by words or explanations of the act long after its

14  occurrence.  Frequently, the actions of individuals speak of

15  their intentions more clearly than do their words, as was said

16  in the old adage, actions often speak louder than words.

17  Accordingly, knowledge and intent are often established by the

18  defendant's words, conduct, acts and all the circumstances that

19  surround them as of the time that the act occurred and the

20  reasonable inferences that you can draw from what the

21  defendant, did, said, at that time.  You should apply your

22  common sense and draw such reasonable inferences as may be

23  warranted by facts that are proved to your satisfaction.

24          In determining these issues you may consider any

25  statements made and acts done or omitted to be done by the

ICi5iss1

1  defendant, together with all other facts and circumstances that

2  are in evidence which reasonably relate to the determination of

3  the defendant's state of mind.  In other words, the only way

4  for you to determine whether the government has proved the

5  defendant's intention beyond a reasonable doubt is to take into

6  consideration all of the facts and circumstances as shown by

7  the evidence including the exhibits, testimony, stipulations,

8  and determine from such facts and circumstances whether it was

9  the intent of the defendant at the time if question to attempt

10  to evade and to defeat the taxes at issue.

11              (Continued on next page)

ICIHIss2                    Charge

1      THE COURT:  This says the same thing for about the

2  15th time, which we don't need to do.

3      In determining whether the defendant acted knowingly

4  and willfully, you may consider also whether the defendant

5  deliberately closed his eyes to what would otherwise have been

6  obvious to him.  If you find beyond a reasonable doubt that the

7  defendant acted with a conscious purpose to avoid learning the

8  truth, this would permit an inference of knowledge on the part

9  of the defendant.

10      Stated another way, a defendant's knowledge of a fact

11  may be inferred from willful blindness to the existence of that

12  fact.  You may consider whether or not defendant displayed

13  deliberate indifference or refusal to be perform -- to be

14  informed in this regard.  It is entirely up to you whether you

15  find any deliberate closing of the eyes, and it's up to you

16  what inference you draw from the evidence.

17      I remind you that not filing a tax return by itself is

18  insufficient to establish willfulness.  In deciding about the

19  defendant's state of mind, you should consider all the evidence

20  that, in your common sense and experience, bears on this

21  question.  Enough already.

22      Count Five charges that from in or about 2012 until in

23  or about August of 2016, the defendant, Ibrahim Issa, aided and

24  assisted in the preparation and presentation of a fraudulent or

25  false amended corporate tax return, otherwise known as IRS Form

ICIHIss2                    Charge

1120X, for First Star Auto Repair Inc. for the tax year 2012.

This charge has three elements that the government
must establish beyond a reasonable doubt.

The first element of Count Five is that the defendant
advised or assisted the preparation of a federal income tax
return.  In this case, the income tax return is the amended
corporate income tax return for First Star Auto Repair Form
1120X, and this is a form that was subsequently filed with the
IRS.  You must find that it was subsequently filed with the
IRS.

To satisfy this element, the government is not
required to prove that the defendant personally prepared the
return in issue or that he dealt personally with the taxpayer
or that he signed the return.  May prove those things; doesn't
have to prove those things.  It is sufficient to satisfy this
first element if the government proves that the defendant in
any way assisted directly or indirectly in the preparation of
the return.

The second element you must find beyond a reasonable
doubt is that the tax return was false as to at least one
material matter.

Count Five specifically alleges that the amended
corporate tax return for First Star Auto Repair for tax year
2012 was false and fraudulent as to material matters because it
fraudulently misrepresented First Star Auto Repair's income and

1    expenses.  A tax return may be false in a number of ways, such

2    as the understatement of income or the overstatement or

3    mischaracterization of expenses.  The false statement in the

4    return must be material.  This means it must be essential to an

5    accurate determination of the defendant's tax liability.

6           The third and final element you must find beyond a

7    reasonable doubt is that the defendant acted willfully, which

8    is a term I have already defined for you.

9           With respect to Count Five, in order for the

10   government to prove that the defendant acted willfully, it must

11   establish beyond a reasonable doubt that the defendant acted

12   voluntarily and intentionally, with the specific intent to aid

13   and assist in the filing of a false tax return when it was his

14   legal duty not to do that and the defendant knew it was his

15   legal duty not to do that.

16          Counts Six, Seven, and Eight charge Mr. Issa with

17   subscribing to false individual tax returns.  Count Six is for

18   the tax year 2012.  Count Seven is for the tax year 2013.  And

19   Count Eight is for the tax year 2014.

20          The charge of subscribing to false individual income

21   tax returns has four elements.

22          The first element that the government must prove

23   beyond a reasonable doubt under these counts, considered

24   separately, each year considered separately, is that the

25   defendant subscribed and filed the tax return that you are

ICIHIss2                          Charge

considering for that count.

          A tax return is subscribed at the time it is signed.
A tax return filed using an electronic signature is treated in
the same manner as if it was actually wet signed.  A tax return
is filed at the time it is delivered or submitted to the IRS.
It is not required that the tax return be processed or accepted
by the IRS in order to satisfy this element.

          The second element that the government must prove
beyond a reasonable doubt under each of Counts Six, Seven, and
Eight, considered separately, is that the return you are
considering contained a written declaration that it was made
under penalty of perjury.  To satisfy this element, the
government must prove that on the face of the return, it
contained a statement indicating that the return was made under
penalty of perjury.

          The third element the government must prove beyond a
reasonable doubt is that the defendant did not believe that the
return you are considering for each count to be true and
correct as to every material matter.  To prove this element,
the government must prove that at least one item on the return
was materially false and the defendant knew that this was so.

          An income tax return may be false not only by reason
of understatement of income but also because of overstatement
of lawful deductions or because deductible expenses were
mischaracterized on the return.  The false statement in the

ICIHIss2                        Charge

return must be material.  That means it must be essential to an

accurate determination of the defendant's tax liability.

        The government must also prove that the defendant knew

that the statement was false.  Remember that a person acts

knowingly when he acts intentionally and voluntarily and not

because of ignorance, mistake, accident, or carelessness.

Whether the defendant acted knowingly may be proved by the

defendant's conduct and by all the facts and circumstances

surrounding the case.

        The fourth and final element you must find beyond a

reasonable doubt under each of Counts Six, Seven, and Eight,

considered separately, is that the defendant acted willfully.

I already explained the meaning of the term "willfully" when we

were talking about Count Four.

        With respect to Counts Six, Seven, and Eight, in order

for the government to prove this element, it must establish

beyond a reasonable doubt that the defendant acted voluntarily

and intentionally with the specific intent to make a statement

that the defendant knew was false when it was the legal duty of

the defendant to answer truthfully, and the defendant knew it

was his legal duty to answer truthfully.

        Now, with respect to Counts One, the bribery count;

Two, the government funds count; and Counts Four through Eight,

the substantive tax counts, Mr. Issa is charged not only with

committing those crimes but with having aided and abetted or

1  willfully causing another person to commit those crimes.  If

2  you all agree that the government has proved the defendant

3  guilty beyond a reasonable doubt on any of the substantive

4  counts I have just described, you don't need to consider these

5  alternate theories of liability as to that specific count.

6  However, if you do not find the defendant guilty beyond a

7  reasonable doubt on any one or more of the substantive counts,

8  you will then consider whether the government has proven that

9  the defendant is guilty under one of two alternative theories:

10  aiding and abetting and willfully causing the commission of a

11  crime by someone else.

12        It is unlawful for a person to aid, abet, counsel,

13  command, induce, or procure someone else to commit a crime.  A

14  person who does that is just as guilty of the crime as if he

15  actually committed it.  Accordingly, if a defendant is charged

16  with a substantive count in an indictment, you may find the

17  defendant guilty on that count if you find the government has

18  proved beyond a reasonable doubt that someone else actually

19  committed the crime and that the defendant aided, abetted,

20  counseled, commanded, induced, or procured the commission of

21  the crime.

22        In order to convict a defendant as an aider and

23  abettor, the government must prove beyond a reasonable doubt

24  two elements:

25        First, it must prove that somebody other than the

ICIHIss2                    Charge

defendant actually committed a crime.  It has to be the crime

charge.  Obviously, no one can be convicted of aiding and

abetting the criminal acts of someone else if nobody else

committed a crime in the first place.  Accordingly, if the

government has not proved beyond a reasonable doubt that a

person other than the defendant committed the substantive crime

charged in each of those counts of the indictment, One, Two,

and Four through Eight, then you need not consider the second

element under this theory of aiding and abetting.  But if you

do find that a crime was committed by someone other than the

defendant, then you should consider whether the defendant aided

or abetted the commission of that crime.

In order to convict a defendant on an aiding and

abetting theory, the government must prove that the defendant

willfully and knowingly associated himself in some way with the

crime and that he willfully and knowingly engaged in some

affirmative conduct or some overt act for the specific purpose

of bringing about that crime.  Participation in a crime is

willful if it is done voluntarily and intentionally and with

the specific intent to do something the law forbids.

The mere presence of the defendant in a place where a

crime is being committed is not enough to make the defendant an

aider and abettor, even if he knows that a crime is being

committed.  Similarly, a defendant's acquiescence in the

criminal conduct of another, even with guilty knowledge, is not

ICIHIss2                          Charge

enough to establish aiding and abetting.  An aider and abettor
must know that the crime is being committed, and he must act in
a way that is intended to bring about the success of the
criminal venture.

So to determine whether a defendant aided and abetted
the commission of a crime by someone else, ask yourself these
questions:

Did the defendant participate in the crime charged as
something he wished to bring about?

Did he knowingly associate himself with the criminal
venture?

Did he seek by his actions to make the criminal
venture succeed?

If the defendant did that, then he's an aider and
abettor, and he's guilty of the offense.  If the defendant did
not do that, then he's not an aider and abettor.

Alternatively, the government may meet its burden by
establishing the defendant willfully caused someone else to
commit a crime.  The law provides that whoever willfully causes
an act to be done which if directly performed by him would be a
criminal offense is punishable as a principal.

What that means is that even if the defendant himself
did not commit the particular crime that's charged, the
government may meet its burden of proof by proving that another
person actually committed the offense with which the defendant

is charged and proving beyond a reasonable doubt that the

defendant willfully caused that other person to commit the

crime.

         The term "willfully" means intentionally rather than

through mistake, mere negligence, or for some other innocent

reason.  Therefore, if you are persuaded beyond a reasonable

doubt that the defendant willfully caused someone else to

commit a particular substantive crime, then he is just as

guilty of that crime as if he had done it himself.

         There is one critical difference between aiding and

abetting and willfully causing another to commit a crime.  With

respect to willful causation, the government need not prove

that the defendant acted through a guilty person.  Rather, the

defendant can be found guilty even if he acted through someone

who had no knowledge of the crimes charged in the indictment.

         OK.  So we have one count left, and that is

conspiracy.

         In addition to the substantive counts of tax fraud,

Counts Four through Eight, the defendant is charged in Count

Three with conspiracy to defraud the Internal Revenue Service,

to subscribe to false and fraudulent tax returns, to aid and

assist in the preparation and filing of false tax returns, and

to attempt to evade and defeat a substantial part of income tax

that was due and owing.

         What is a conspiracy?  It is an agreement or

ICIHIss2                      Charge

understanding between two or more persons that they would try
to accomplish some unlawful purpose.

        A conspiracy, in other words, is an agreement to
violate the law.

        The offense of conspiracy to commit an illegal act is
separate and distinct from the actual commission of the illegal
act.  To put it in context, conspiring to commit the tax
offenses as charged in Count Three is a separate and distinct
crime from actually committing the tax offenses that are
charged in Counts Four through Eight.  For example, the jury
could find that the defendant had failed to prove -- the
government had failed to prove that the defendant actually
aided and assisted in the preparation and filing of false tax
returns as charged in Count Four, but could also find that the
government had proved beyond a reasonable doubt that the
defendant conspired, agreed to aid and assist in the
preparation and filing of false tax returns.

        So even if you acquit the defendant on all of the
substantive tax counts, Count Four, Five, Six, Seven, and
Eight, you must still decide whether the government has proved
beyond a reasonable doubt that the defendant conspired, that he
agreed with others, to commit the tax offenses as alleged in
Count Three.

        Now, the first element of the crime of conspiracy that
the government must prove beyond a reasonable doubt is that two

ICIHIss2                    Charge

1     or more persons entered into an agreement to do something that

2     violated the law.

3            In order to prove the existence of this agreement, the

4     government is not required to show that two or more people sat

5     around a table and entered into a solemn compact, orally or in

6     writing, stating "We agree to violate the law" and setting out

7     the details of how they're going to do that.  Your common sense

8     will tell you that when people enter into a criminal

9     conspiracy, much is left to their unexpressed understanding.

10    Conspirators do not usually reduce their agreements to writing

11    or acknowledge them before a notary public, nor do they

12    broadcast their plans to the public.  From its very nature, a

13    conspiracy is almost always secret, both in its origins and in

14    its execution.

15           It is therefore sufficient if the government proves

16    beyond a reasonable doubt that two or more people arrived at a

17    common understanding to violate the law in some way or manner

18    either explicitly or by implication.

19           No particular number of people need to agree to

20    violate the law together in order for the government to prove

21    that a conspiracy existed.  It need prove only that two or more

22    people entered into the unlawful agreement that is alleged in

23    the indictment in order for to you find that a conspiracy

24    existed.

25           In deciding whether the government has proved the

ICIHIss2                        Charge

existence of a conspiracy beyond a reasonable doubt, you may

consider whether the alleged coconspirators did anything that

would have tended to carry out an apparent criminal purpose.

The old adage "actions speak louder than words" is also

applicable here.  Sometimes the only evidence available to

demonstrate the existence of an agreement to violate the law

concerns seemingly disconnected acts that tend to show the

existence of an agreement when you consider them in connection

with each other.  Evidence of this sort can prove the existence

of a conspiracy as satisfactorily and conclusively as more

direct proof.  So in deciding whether the conspiracy charged in

Count Three of the indictment actually existed, you may

consider not just what the alleged conspirators said but also

their actions, their conduct.

In regard to the timing of the alleged conspiracy,

Count One alleges that it existed from 2012 through

August 2016.  Now, it's not necessary that the government prove

that the conspiracy started or ended on a particular precise

date, as long as it proves beyond a reasonable doubt that the

conspiracy was formed and existed at some point during the

period that is alleged in the indictment.

Now, the object of a conspiracy is the illegal thing

that the members of the conspiracy agree they will try to

accomplish.  The indictment charges that the conspiracy alleged

in Count Three had four objects:  It had the object to defraud

ICIHIss2                    Charge

1    the Internal Revenue Service, the object to subscribe to false

2    and fraudulent tax returns, the object to aid and assist in the

3    preparation and filing of false tax returns, and the object to

4    attempt to evade and defeat a substantial part of the income

5    taxes that were due and owing.

6          Now, it is not necessary for you to find that the

7    conspiracy embodied all four of the unlawful objectives.  So if

8    you were to find that the evidence establishes the existence of

9    a conspiracy to accomplish only one of the four objectives,

10   that will be fine, as long as all 12 of you agreed about which

11   one that was.  But if six of you concluded that the government

12   had proved objective number two and none of the rest of them

13   and six of you concluded that the government had proved object

14   number three and none of the rest of them, you would not have a

15   unanimous verdict.

16         So let me now instruct you in more detail about the

17   four objects.

18         First object is to defraud the IRS.  A conspiracy to

19   defraud the United States need not necessarily involve cheating

20   the government out of money or property.  The statute also

21   includes conspiracies to interfere with or obstruct any lawful

22   government function by fraud, deceit, or any dishonest means.

23   I instruct you that the Internal Revenue Service, commonly

24   known as the IRS, is an agency of the United States government.

25   The IRS is responsible for the collection of tax revenue.  As

ICIHIss2                    Charge

1    part of these efforts, the IRS requires that taxpayers,

2    including corporations, truthfully and honestly report their

3    full taxable income and deductions.  Thus, the phrase

4    "conspiracy to defraud the United States" as used in the

5    indictment means that the defendant and his coconspirators

6    allegedly conspired to impede, impair, obstruct, or defeat the

7    lawful functions of the IRS to determine what taxes are owed

8    and to collect those tax revenues.

9          It is not necessary that the government or the IRS

10   actually suffer a financial loss from the scheme, although in

11   this case the government contends that such losses did occur.

12   Nor is it necessary for you to find that at any particular

13   instance the conspirators' conduct was actually examined by the

14   IRS.  A conspiracy to defraud exists when the government proves

15   beyond a reasonable doubt that there was an agreement between

16   the defendant and one or more other people to impede, impair,

17   obstruct, or defeat some lawful function of the IRS by fraud or

18   dishonest means.  Even if the taxpayer's ultimate legal

19   position on some issue is correct and he owes no additional

20   taxes, that's not a defense to the crime charged.  One cannot

21   use deception and dishonest means, such as making false

22   statements to the IRS, to impede, impair, obstruct, or defeat

23   the IRS, even to protect a legitimate tax position.

24         The second object of the conspiracy alleged in the

25   indictment is that the defendant and others agreed to violate

1    the law that makes it a crime to subscribe to or to sign false

2    tax returns.

3            I described the elements of that offense to you when I

4    talked to you about Count Six, Seven, and Eight.  The same

5    elements apply to the second object of the conspiracy.  You

6    should apply those instructions when you're considering whether

7    the government has proved this second object of the conspiracy.

8            But Counts Six, Seven, and Eight charge Mr. Issa with

9    subscribing to false individual income tax returns, but Count

10   Three, the conspiracy count we're talking about now, alleges

11   that he conspired with others in the subscribing to false

12   corporate tax returns of companies that were controlled by him

13   for the year 2012.  OK.  So it may be the same elements, but

14   Counts Six, Seven, and Eight, you're applying those to

15   Mr. Issa's individual tax returns, and in the conspiracy count,

16   the alleged conspiracy has to do with the corporate tax

17   returns.

18           And because Count Three charges a conspiracy, unlike

19   Counts Six, Seven, and Eight, the government does not need to

20   prove that anyone actually committed the substantive crime of

21   subscribing to a false tax return.  It needs to prove beyond a

22   reasonable doubt only that there was an agreement to do so.

23           The third object of the conspiracy alleged in the

24   indictment is that the defendant and others agreed to violate

25   the law that makes it a crime to aid and assist in the

ICIHIss2                    Charge

1   preparation and filing of false tax returns.  That's the crime

2   that was charged in Count Five, and it occurs when a person

3   willfully advises or assists in the preparation of a false tax

4   return.

5           Apply the instructions on the elements of the crime of

6   willfully advising or assisting in the preparation of a false

7   tax return that I gave you in connection with Count Five when

8   considering whether the government has proved this object of

9   the conspiracy.

10          Again, there's a distinction between the substantive

11  count alleged in Count Five and the third object of the

12  conspiracy alleged in Count Three.  You have to keep it in

13  mind.  Count Five relates specifically to the charge that

14  Mr. Issa aided and assisted in the preparation and presentation

15  of a false or fraudulent amended corporate tax return for First

16  Star Auto for the year 2012, but the object of the conspiracy,

17  the third object of the conspiracy alleged in Count Three is

18  broader than that.  It includes aiding and assisting in the

19  preparation of a fraudulent or false corporate tax return for

20  any companies owned or controlled by Mr. Issa.

21          Furthermore, because Count Three charges a conspiracy,

22  unlike Count Five, the government does not need to prove that

23  anyone actually committed the substantive crime of aiding and

24  assisting in the preparation and presentation of a false tax

25  return.  It only needs to prove that there was an agreement to

ICIHIss2                         Charge

1     do that.

2          The fourth and final object of the conspiracy alleged

3     in the indictment is that the defendant and others agreed to

4     violate the law that makes it a crime to attempt to evade and

5     defeat a substantial part of the tax that was due and owing.

6     Now, I described the elements of that offense to you in

7     connection with Count Four, and the same definition of the

8     elements applies to the fourth object of the conspiracy, so you

9     should apply the Count Four instructions when considering

10    whether the government proved this object of the conspiracy.

11         But once again, there's a distinction.  Count Four

12    relates specifically to Mr. Issa's attempting to evade taxes

13    for the tax year 2012 with respect to First Star Auto Repair

14    Inc.  But the fourth object of the conspiracy alleged in Count

15    Three is broader than that, and it includes tax evasion for the

16    tax year 2012 for additional companies controlled by Mr. Issa.

17         Once again, because Count Three charges a conspiracy,

18    the government does not need to prove that anyone committed the

19    substantive crime of tax evasion.  It need prove beyond a

20    reasonable doubt only that there was an agreement to do so.

21         If you conclude that the government has proven beyond

22    a reasonable doubt that the conspiracy charged in Count Three

23    existed, you'll move on to the second element of the crime,

24    which is that the defendant, Mr. Issa, joined in the conspiracy

25    and that he did so knowingly and willfully and with the intent

ICIHIss2                    Charge

1    to further its unlawful purpose or purposes.

2              The government must prove beyond a reasonable doubt

3    that the defendant had the appropriate level of knowledge with

4    respect to the illegal agreement into which he entered and that

5    he agreed to take part in the conspiracy to further, promote,

6    and cooperate in its unlawful objective or objectives.  With

7    respect to the first object of the conspiracy, the scheme to

8    defraud the United States, the government must prove that the

9    defendant acted knowingly and unlawful.

10             An act is done knowingly if it is done deliberately

11   and purposefully; that is, the action must have been a product

12   of the defendant's conscious objective rather than the product

13   of a mistake or accident or negligence.  Please keep in mind my

14   previous instructions regarding the knowledge element.

15             "Unlawfully" means contrary to law.  The defendant

16   need not have known that he was breaking the law.

17             With respect to the second, third, and fourth

18   objects -- subscribing to false tax return, aiding and

19   assisting the preparation and filing of false tax returns, and

20   attempting to evade and defeat a substantial part of the income

21   taxes that were due and owing -- the government must also prove

22   beyond a reasonable doubt that the defendant acted willfully.

23   So it has to prove knowingly, it has to prove unlawfully, and

24   it has to prove willfully, as I defined that term from

25   previously instructing you.

1          Now, it's not necessary that the defendant had been

2     fully informed about all the details of the conspiracy in order

3     to justify an inference of knowledge on his part.  To have

4     guilty knowledge, the defendant need not have known the full

5     extent of the conspiracy or about all of its activities or

6     participants.  Nor is it necessary that the defendant received

7     any monetary benefit from participating in the conspiracy or

8     have a financial stake in the outcome as long as he, in fact,

9     did participate in the conspiracy in the manner I've explained.

10    The existence or nonexistence of such an interest may properly

11    be considered by you in determining whether the defendant was a

12    member of any conspiracy.

13         In determining whether the defendant acted knowingly,

14    you may consider whether he deliberately closed his eyes to

15    what otherwise would have been obvious to him.  If you find

16    beyond a reasonable doubt that the defendant was aware of a

17    high probability that the tax returns were false and that the

18    defendant acted with a conscious purpose to avoid learning the

19    truth about whether or not the tax returns were accurate, then

20    the knowledge element is satisfied.  But I want to caution you

21    that the knowledge requirement is not satisfied if all the

22    government demonstrates is that the defendant was negligent or

23    foolish or mistaken.

24         The duration and extent of a defendant's participation

25    has no bearing on the issue of his guilt.  A defendant need not

ICIHIss2                    Charge

have joined a conspiracy at the outset.  He may have joined it
for any purpose at any time during its progress.  Once he
joins, he will be held responsible for everything that happened
before he joined and everything that happens during the
conspiracy's existence while he is a member.

         Each member of a conspiracy may perform separate and
distinct acts and may perform them at different times.  Some
conspirators may play major roles and others, minor roles.
Equal roles is not what the law requires.  In fact, even a
single act may be sufficient to make the defendant a part of
the conspiracy.

         I want to caution you, however, that mere association
by one person with another does not make that person a member
of a conspiracy, even when coupled with knowledge that a
conspiracy is taking place.  Mere presence at the scene of a
crime, even coupled with knowledge that a crime is taking
place, is not sufficient to support a conviction.  So mere
association in a business or otherwise with a conspirator does
not by itself make one a member of that conspiracy, although a
conspiracy may exist between persons who are also associated in
lawful business activities.  What is necessary is that the
defendant participated in the conspiracy with knowledge of its
object or objects and with an intent to aid in the
accomplishment of those objects.

         The third element the government must prove beyond a

ICIHIss2                    Charge

reasonable doubt is that at least one overt act was committed

in furtherance of the conspiracy by some coconspirator, not

necessarily the defendant.

          The purpose of the overt act requirement is clear.

There must have been something more than just making an

agreement.  Some overt step or action must have been taken by

at least one of the conspirators in furtherance of that

conspiracy.

          The overt acts are set forth at paragraph 30 in the

indictment, and there are four of them, which we are reprinting

in the charge for your consideration while deliberating.

          In furtherance of the conspiracy and to effect the

illegal objects thereof, Ibrahim Issa, also known as "Tony

Issa," the defendant, together with others, known and unknown,

committed the following overt acts, among others, in the

Southern District of New York and elsewhere:

          A.  In or about 2013, Issa prepared or caused to be

prepared the false 2012 Issa Company-1 Form 1120, which was

then sent to the IRS from the Bronx, New York.

          B.  In or about 2014, Issa and Coconspirator-1

provided false information to Tax Preparer-1, causing to be

prepared the false 2012 Issa Company-1 Form 1120X.

          C.  On or about August 27, 2014, Issa signed and

subscribed the false 2012 Issa Company-1 Form 1120X.

          D.  On or about July 28, 2015, Coconspirator-1

ICIHIss2                    Charge

1    provided to Tax Preparer-2 a profit and loss statement for Issa

2    Company-3 that omitted moneys received from Issa Company-1

3    causing to be filed a false Form 1120 for Issa Company-3 for

4    the tax year 2012.

5            Now, to translate, Issa Company-1 is First Star Auto.

6    Coconspirator-1 is Daniela Silva.  Tax Preparer-1 is Chris

7    Tsamutalis.  Tax Preparer-2 is George Mousouris.  And Issa

8    Company-3 is High Power Auto.

9            For the government to satisfy the overt act

10   requirement, it is not necessary for the government to prove

11   all of the overt acts alleged in the indictment.  In fact, the

12   government could prove none of the four overt acts that are

13   alleged in the indictment and still satisfy the third element,

14   as long as you found beyond a reasonable doubt that the

15   government proved some other overt act that was not alleged

16   specifically in the indictment.  That's because the indictment

17   says "committed the following overt acts, among others."  The

18   only requirement is that the conspiracy have gone beyond the

19   mere talking stage and that one of the members of the

20   conspiracy, not necessarily Mr. Issa, took some step or action

21   in furtherance of the conspiracy during the life of the

22   conspiracy.

23           You are further instructed that the overt act need not

24   have been committed at precisely the time alleged in the

25   indictments.  It is sufficient if you are convinced beyond a

ICIHIss2                    Charge

1    reasonable doubt that it occurred at or about the time or place

2    stated, as long as it occurred while the conspiracy, the

3    agreement, was still in existence.

4         Now, bear in mind that an overt act standing alone may

5    be an innocent and lawful act.  However, an apparent innocent

6    act can shed its harmless character if it is a step in carrying

7    out, promoting, aiding, or assisting the conspiratorial scheme.

8    You are therefore instructed that the overt act does not have

9    to be an act which in and of itself is criminal or which in of

10   itself constitutes an object of the conspiracy.

11        Finally, I need to instruct you on certain aspects of

12   the tax laws that will assist you during your deliberation.

13   The first one has to do with Form 1120.

14        Pursuant to the Internal Revenue Code and attendant

15   regulations, corporations are required annually to report their

16   revenues and attendant tax obligations on a United States

17   corporate tax return Form 1120 unless specifically exempted by

18   Congress.  The Form 1120 must be filed with the IRS, and it is

19   used to calculate the taxes owed to the IRS, if any, or

20   alternatively, a refund if one is owed to the corporation.

21        Pursuant to the Internal Revenue Code and attendant

22   regulations, a corporation must include on its Form 1120 gross

23   income, which tax law defines as all income from whatever

24   source derived, unless specifically exempted by law.

25        According to the tax law, a corporation may deduct

ICIHIss2                    Charge

from its gross income certain itemized deductions.  The tax law

provides in general there shall be allowed as a deduction all

ordinary and necessary expenses paid or incurred during the

taxable year in carrying on any trade or business.  An ordinary

expense is one that is common and accepted in the corporation's

trade of field, business, or profession.  A necessary expense

is one that is helpful and appropriate for the corporation's

business.  An expense does not have to be required to be

considered necessary.

One permissible deduction is for something called the

"cost of goods sold."  A corporation that wishes to claim an

expense of the cost of goods sold must complete a United States

corporate tax Form 1125-A, which must be filed with the IRS.

The cost of goods sold is the total of, for example, purchases,

labor costs, and any other costs listed by a corporation on

that separate schedule.

OK.  That has to do with the corporation.  Now we're

going to turn to individuals.

Form 1040.  Pursuant to the Internal Revenue Code and

attendant regulations, individuals generally are required

annually to report their income and any attendant tax

obligations on a United States Individual Income Tax Return,

Form 1040, which must be filed with the IRS.  The Form 1040 is

also used to calculate the refund, if any, due to the taxpayer.

Pursuant to the Internal Revenue Code and attendant

ICIHIss2                    Charge

regulations, a taxpayer must include on his Form 1040 gross

income, all income from whatever source is derived, unless

specifically exempted by law.

          A taxpayer who wishes to claim certain itemized

deductions must complete a form called Schedule A and file it

along with Form 1040.  These deductions can include, among

other things, unreimbursed employee business expenses and

miscellaneous expenses.  As a general matter, taxpayers are

required to maintain records substantiating the deductions.

          Under the tax law, a taxpayer is permitted to deduct

certain expenses incurred in connection with his or her

employment if such expenses satisfy each of the following three

requirements:  The expense must be paid in connection with the

employer's trade or business; it must be an ordinary and

necessary expense of the business; and the expense must not

have been reimbursed by the employer.  I earlier told you what

an ordinary expense was and what a necessary expense was and

that an expense does not have to be required to be considered

necessary.  To be deductible, the taxpayer must be able to

substantiate the amount and employment purpose of all such

expenses.  If a taxpayer claims any other type of unreimbursed

employee expense, he is required to list the type and amount of

each expense, either on the appropriate line on 1040 or on an

attached statement.

          Finally, a person who operates a business or practices

ICIHIss2                    Charge

a profession as a sole proprietor must report income or loss on

a Form 1040 Schedule C.  An activity generally qualifies as a

business if the primary purpose for engaging in the activity is

for income or profit, and the taxpayer is involved in the

activity with continuity and regularity.  Sporadic activity or

a hobby does not qualify as a business.

         Now, I remind you that it is the government's burden

to prove the defendant guilty beyond a reasonable doubt of the

specifically charged violations of identified federal criminal

laws.  You may have heard testimony suggesting that the

defendant committed acts that you might deem to be

inappropriate, such as breaching the terms of contracts,

failing to pay taxes due under state or local laws, or trying

to cause people to violate postal service ethical rules, rules

that may overlap in some respects with the federal bribery

statute.  Those things raise independent issues that are not

charged in this case.

         So when you consider this case, focus on the elements

of the crimes charged as I've explained them to you.  You may

consider evidence about things like USPS rules or contract

terms, but only insofar as it is relevant to the elements of

the crimes charged.

         Now, in addition to all of that, with respect to each

alleged crime, you must consider the issue of venue, namely,

that some act in furtherance of the unlawful activity charged

ICIHIss2                    Charge

1    in each count occurred in the Southern District of New York.

2    The Southern District of New York includes Manhattan, the

3    Bronx, Westchester, Rockland, Putnam, Dutchess, Orange, and

4    Sullivan counties.  Anything that occurs in the counties I have

5    listed for you occurs in the Southern District of New York,

6    that is, those counties and on the Verrazano-Narrows Bridge,

7    which is not relevant to this case, but it's an interesting

8    little fact.  Verrazano-Narrows Bridge is in both the Southern

9    and Eastern Districts of New York.  I'm not sure why.

10            In this regard, the government need not prove that the

11   entirety of the charged crime was committed in the Southern

12   District of New York or that the defendant was present here.

13   It is sufficient to satisfy the venue requirement if any act in

14   furtherance of the crime charged occurred within the Southern

15   District of New York.

16            Now, as to the venue requirement and the venue

17   requirement only -- I'm not sure why because it just

18   complicates matters -- the government does not need to prove

19   venue beyond a reasonable doubt.  It's the only thing the

20   government does not need to prove beyond a reasonable doubt.

21   It only has to prove venue by a preponderance of the evidence,

22   which means it's more likely than not that there is a

23   sufficient connection to the Southern District of New York.

24            You must decide separately whether, as to each

25   separate count, there is sufficient connection to the Southern

ICIHIss2                          Charge

District of New York.

          With respect to Counts One and Two, venue is

established if any act in furtherance of the crime charged

occurred within the Southern District of New York.

          I'm not repeating this.  Enough.

          With respect to Count Four, the tax evasion charge,

venue is established if the government proves by a

preponderance of the evidence that any one affirmative act of

evasion occurred in the Southern District of New York.

          With respect to Count Five, the aiding and assisting

in the preparation and presentation of a false corporate income

tax charge, the government may establish venue by proving, with

respect to the return at issue, either that the return was

prepared and signed in the Southern District of New York or

that the return was received and filed in the Southern District

of New York or that any act of aiding and assisting in the

preparation of the return took place in the Southern District

of New York.

          With respect to Count Six through Eight, venue is

established with respect to each return at issue if you find

that the government has proved by a preponderance of the

evidence that the return was prepared and signed in the

Southern District of New York, received and filed in the

Southern District of New York, or that the defendant

transmitted or caused the transmission of information from the

ICIHIss2                    Charge

Southern District of New York to the defendant's accountant for
the purpose of preparing the return.

          Finally, with respect to Count Three, venue is
established if you find either that the agreement was formed or
that an overt act was committed or caused to be committed in
the Southern District of New York.

          If you find that the government has failed to
establish venue as to any count, then you must acquit the
defendant on that count.

          As we've proceeded through the charge, you notice I
referred to various dates.  It doesn't matter if a specific
event is alleged to have occurred on or about a certain date or
month, but the testimony indicates it was a slightly different
date or month.  The law only requires substantial similarity
between the dates and months alleged in the indictment and the
dates and months that are established by the evidence.  What
constitutes substantial similarity is up to you.

          OK.  Ladies and gentlemen, the verdict must represent
the considered judgment of each juror.  In order to return a
verdict, you must be unanimous, all 12 jurors must agree either
that the government has overcome the presumption and proven the
defendant's guilt beyond a reasonable doubt or that it has not.

          So you've heard a lot of evidence and argument over
the last two weeks.  I will be very surprised if you don't have
some different opinions.  How do you reach a unanimous verdict?

ICIHIss2                          Charge

1      Well, you have to do two things:  First, you have to share with

2      the other jurors your view about what the evidence shows,

3      what's believable, what's credible, what's important, what

4      proves what.  That's part one.  Part two is you have to sit

5      back and listen to everybody else do the same thing.  A

6      deliberating juror both talks and listens.

7            It's your duty to consult with each other so you can

8      deliberate with a view toward reaching an agreement.  Now, I

9      don't want you to do violence to your individual judgment

10     because, in the end, each of you decides the case for yourself,

11     but you can't do that until you have impartially considered the

12     evidence and the views of your fellow jurors.

13            At this moment in the charge, I tell a story about

14     many years ago when I was a judge down the street in the state

15     courthouse, and this is a unique experience in my 23 years of

16     doing this.  I got a note from the jurors saying they couldn't

17     reach a verdict, and it turned out when they went back into the

18     jury room, one of the jurors announced that this was the

19     verdict, this is the way he saw the evidence, and that that was

20     the only thing he was going to consider and he didn't care what

21     they thought.  The other jurors were not able to engage him in

22     conversation.  He simply wouldn't talk.  Finally, he turned his

23     chair to the wall and he pulled out his newspaper and started

24     reading it rather than engage in a thoughtful exchange of views

25     with the other jurors.

ICIHIss2                    Charge

1          That jury didn't reach a verdict.  You know you're not
2    going to be like that jury, OK?  You're going to impartially
3    consider the evidence, listening to and considering the views
4    of your fellow jurors.  In the course of your deliberations,
5    don't hesitate to reexamine your own views.  Change your mind
6    if you are convinced by the arguments of other jurors and their
7    perspective on the evidence that there's a better way to look
8    at the evidence.  By the same token, don't surrender your
9    honest conviction about the weight or the effect of the
10   evidence just because the other jurors have a different opinion
11   from you or merely for the purpose of getting out of here.
12          Remember at all times, you are not partisans.  You are
13   the judges of the facts.
14          When you retire, first thing you should do is elect
15   one of you to be the foreperson of the jury.  The foreperson is
16   no more important than anybody else on the jury.  The
17   foreperson's vote has no greater weight than the weight of
18   anybody else's vote on the jury.  What does the foreperson do?
19   Well, the foreperson presides over your deliberations, whatever
20   that means to you, and the foreperson is the person who speaks
21   for you here in open court.  So pick somebody who you want to
22   have do that.
23          If it becomes necessary during your deliberations for
24   you to communicate with me, send me a note signed by the
25   foreperson.  If the foreperson goes on strike, that's happened

ICIHIss2                      Charge

1    to me twice, somebody else should sign the note.  No member of

2    the jury should ever try to communicate with me by any means

3    other than a signed writing, and I'm not going to communicate

4    with you except in two ways:  Either I will send you back a

5    signed writing, and if I do that, it will not just be signed by

6    me, it will be signed by one of the law enforcement officers

7    for the government and it will be signed by Mr. Brafman, or

8    we'll bring out here and I'll talk to you the way I'm talking

9    to you now, and we will all be here.

10            Now, do we have a court security officer?

11            THE LAW CLERK:  He has not appeared yet.

12            THE COURT:  In that case, I'm putting you in the

13   custody of Mr. O'Neill.  You will note from the oath I'm about

14   to give him that he can't talk to you in any way or manner

15   about any subject that touches on the merits of the case.  He

16   can talk to you about lunch, OK?  He could talk to you about

17   administrative stuff.  He can't talk to you about the case.

18            Mr. O'Neill, would you raise your right hand.

19            (Law clerk sworn)

20            THE COURT:  Now, if you send me a note, please just

21   remember one thing.  Do not tell me what the vote is on any

22   count at any time.  Note:  Judge, we're deliberating on Count

23   Four, and the vote is eight to four for acquittal, and we

24   really need the following answer to the question.  Wrong.  I'm

25   not supposed to know the vote.  It screws everything up until

ICIHIss2                    Charge

the vote is 12 to nothing.  So do not tell me what the vote is
in any note.  Thank you.

        Now, if you need to hear or, in this miraculous era of
computers, to see the testimony of any witness or any part of
that witness' testimony, we can do that.  You send us out a
note signed by the foreperson telling us precisely what you
want to hear.  We will then scour the transcript, and we will
find it.  And in most instances, we now can copy it and send it
back to you.

        I ask you two things:  First, be very specific about
what you want and, second, don't ask for readback -- we still
call it readback -- unless you talk among yourselves and
exhaust your total memory, because the collective memory of 12
people can be better than that of any one.  But remember,
nobody's notes are a substitute for the transcript.  So if,
after you talk, you are still divided about what you think you
heard, do not look at Juror No. 7's notes and resolve the
dispute that way.  Instead, ask for a readback, OK?

        Now, this is the time-consuming thing.  Notes for
readback almost always come when we've either just left for
lunch or I have another matter on the calendar, which I now
have to start drawing my attention to the rest of my cases, or
something like that.  It takes us a little while to get the
passages that you want to hear.  Give us a few minutes.  Keep
going, talk about something else.  We will get the transcript

ICIHIss2                          Charge

1   to you or bring you out to hear it as fast as we can.

2              You will have all of the exhibits that were admitted

3   into evidence in the jury room, and you will have a way to play

4   the tapes.  And one of the few things that you can talk to

5   Mr. O'Neill about is how to make the machine work.  But if you

6   want to look at or listen to any of the tapes, you can do that.

7              And you'll have the charge.  Those of you who have

8   been jurors in state court will probably be thrilled to learn

9   that.  I'm sending it back because jurors have told me over and

10  over again that they find it helpful.  But if you are confused

11  about an instruction, please send out a note and ask me for

12  clarification.  I have nothing better to do until you reach a

13  verdict than help you in any way I possibly can.  Can't give

14  you a lot of help, can't help you find the facts, but I can

15  certainly try to clarify any unclear instructions of law.

16  Don't think that because this is going back with you that you

17  can't ask me for clarification.  You can ask me for

18  clarification, and I will give it to you.

19             Now, you will have in the jury room a verdict sheet.

20  It will ask you how you find the defendant on each count,

21  guilty or not guilty.  You will fill out the verdict sheet as

22  you deliberate on each count.  At the end of your

23  deliberations, you will have the foreperson sign it.  You will

24  put the date on it, and you will send out a note.  And the note

25  will say:  "We have reached a verdict."  That is what the note

ICIHIss2                    Charge

1    will say.  Shouldn't say anything else.  We will gather and we

2    will listen to your verdict.

3                    OK.  I need to see counsel at sidebar.

4                    (At sidebar)

5                    MR. BRAFMAN:  Your Honor, I think we agree that the

6    tapes and the transcripts will go in.

7                    THE COURT:  Yes, they will.

8                    MR. BRAFMAN:  OK.

9                    MR. SOLOWIEJCZYK:  Your Honor, just one very minor

10   thing.  On Count Three, conspiracy, the first element --

11                   THE COURT:  What?

12                   MR. SOLOWIEJCZYK:  -- I think it's page 59 of what I

13   have.

14                   THE COURT:  That's close.  OK.  Here.

15                   MR. SOLOWIEJCZYK:  It says Count One instead of Count

16   Three.

17                   THE COURT:  Oh.

18                   MR. SOLOWIEJCZYK:  I just caught that.

19                   THE COURT:  Thank you.  I was catching things, but --

20                   MR. SOLOWIEJCZYK:  That's it.

21                   MR. BRAFMAN:  Your Honor, we have only the objections

22   we've previously preserved.

23                   THE COURT:  And you have preserved them.

24                   I need initials on this.

25                   MR. BRAFMAN:  Thank you.

ICIHIss2                    Charge

1          THE LAW CLERK:  Take that with you.  Look it over;

2     make sure there are no errors.

3          (In open court; jury present)

4          THE COURT:  Ladies and gentlemen, deliberate only when

5     you are all -- first, Mr. O'Neill, could you take the

6     alternates back in the jury room to gather their belongings,

7     also their lunch.

8          Ladies and gentlemen, deliberate only when you're all

9     together in the room.  The reason for that is you never know

10    when somebody is going to say the thing that will cause the

11    penny to drop, OK.  So just deliberate when you're together in

12    the room.

13         No smoking in the jury room.  I think you know that.

14    If we have someone who needs to smoke or if you decide that you

15    need to get away from each other, do me a favor, do not simply

16    walk out of the jury room.  That too only happened once.  It

17    was the worst day of my life.  We could not find the jurors.

18    It's like the ants got out of the ant farm.  It was terrible.

19    Send out a note, knock on the door, there will be a court

20    security officer outside, and we will arrange for you to take a

21    break.  We will do that.

22         All right.  There is my court security officer.  Sir,

23    would you come up and be sworn.

24         (Marshal sworn)

25         THE COURT:  Thank you.  Great.

1       Ladies and gentlemen, you may now discuss the case and

2   make up your mind.  You also get lunch.

3       (At 12:45 p.m., the jury retired to deliberate)

4       THE COURT:  You can tell that I have not frequently

5   charged tax cases because I have not had an opportunity to

6   whack down that charge.  I will make that a priority item.

7       OK.  We need to make absolutely sure that we have all

8   the exhibits, including the transcripts, everything, because

9   Jim will say:  This is it.  It's going back in.  I don't want

10  any screw-ups.  So somebody from each team needs to be

11  responsible for making sure that only the admitted exhibits go

12  back.

13      MR. WIRSHBA:  Yes, your Honor.

14      THE COURT:  We'll send the verdict sheet back.

15      MR. BRAFMAN:  Your Honor, we've all initialed it.

16      THE COURT:  Thank you.

17      We'll send a cleaned-up copy of the charge back.  I

18  was feeding Jim pages as I was finding typos, two defendants,

19  and things like that.  We'll let the alternates stick around

20  until the middle of the afternoon.  Make sure that nobody has a

21  heart attack.

22      OK.  You guys get some lunch.

23      MR. BRAFMAN:  Your Honor, can we have at least an hour

24  before we have to come back?  Not leaving the building, I'm

25  just saying.

ICIHIss2                    Charge

1          THE COURT:  Yes.  I have to go to a security committee
2     meeting, Mr. Brafman.
3          MR. BRAFMAN:  Thank you.
4          MR. SOLOWIEJCZYK:  Should we leave our cell phone
5     numbers for Mr. O'Neill?
6          THE COURT:  Wait.  Don't leave until he comes back.
7     He's in charge now.  He's the boss now.  I cease to be the
8     boss.
9          (Recess pending verdict)
10          (Jury not present)
11          THE LAW CLERK:  There is a note judge.  It's Court
12     Exhibit 1.
13          THE COURT:  We, the jury -- the third element, Count
14     Two, that's at page 36 of the charge.  "Property,
15     clarification, does it mean only vehicles or includes money?"
16     Answer:  Includes money.
17          Bring out the jury.
18          MR. BRAFMAN:  Note the count is entitled Theft of
19     Funds.
20          THE COURT:  I'm not going to tell them that, but
21     you're right, Mr. Brafman.
22          Then we'll bring the alternates in, and we'll let them
23     go.
24          (At 3:56 p.m., jury returns to the courtroom)
25          THE COURT:  This will be a quick trip out, but I

ICIHIss2                    Charge

1    thought you might like to get out of the room for a minute.

2              JUROR:  Yes.

3              THE COURT:  We have your note, and it's a short note.

4              "Property, clarification, does it mean only vehicles

5    or includes money?"

6              Short answer:  Includes money.  OK.  That's the short

7    answer.  All right.  We all agree that that's the answer.

8              JUROR:  OK.  Thanks.

9              THE COURT:  Back you go.

10             (At 3:58 p.m., jury retired to continue deliberations)

11

12             THE COURT:  It's like contracts, Mr. Brafman, where

13   the headers aren't part of the contract.

14             MR. BRAFMAN:  Right.

15             THE COURT:  I guess the headers aren't part of the

16   charge.

17             OK.  We're going to get the alternates.

18             (Alternate jurors present)

19             THE CLERK:  Alternate jurors are entering.

20             Just have a seat in the front row.  Slide all the way

21   up.

22             THE COURT:  Hi, guys.

23             Hi.  Nobody's had a heart attack in the last few

24   hours, so we're going to let you go.  One thing that I'll ask

25   is that, for tonight anyway, don't discuss the case, OK?  Abide

ICIHIss2                    Charge

1   by the usual rules.  It's theoretically possible, though I

2   rarely do this, but it's theoretically possible, that someone

3   could get a call tomorrow, but we know where to reach you.

4            So you're more or less back to your normal lives.  I

5   can't thank you enough for having taken two weeks out of your

6   lives to sit as alternates, which is a very frustrating thing

7   to do, I know, because you end up not deliberating, but it's an

8   important thing and particularly during the winter months.

9   This is a rare wintery trial for me when somebody has not

10  gotten sick.  It's really been a long time since I haven't had

11  to use alternates on a two-week trial in the months of bad

12  weather and illness.

13           So I'm grateful to you all.  I thank you very, very

14  much for your service, and you are conditionally free to go.

15  All right.

16           (Alternate jurors excused)

17           THE COURT:  That said, I never call jurors back.  I'm

18  the queen of 11-person verdicts, jury verdicts.

19           OK.  We'll give them another hour, hour 15 minutes,

20  something like that.  All right.

21           MR. WIRSHBA:  Your Honor, do you like to reconvene at

22  the end of the day?

23           THE COURT:  As in do I want you here when I send the

24  jurors home?  I never want to be alone with the jurors.

25           MR. WIRSHBA:  Yes, ma'am.

ICIHIss2                    Charge

1              (Recess pending verdict)

2              (Jury not present)

3              THE COURT:  OK.  Time to end things for the day.

4         Just so you all know, I have a TRO hearing on at 10:00

5     tomorrow morning, the annual holiday TRO.  So just be around

6     and available by phone.

7              MR. BRAFMAN:  What time will you be bringing them back

8     in?  9:30?

9              THE COURT:  9:30, but we don't convene first.  They

10    can just get to work.

11             (At 5:05 p.m., jury present)

12             THE COURT:  OK.  One left?

13             THE LAW CLERK:  Still one more, Judge.

14             THE COURT:  That's true.  All this so I can say good

15    night.

16             So everybody needs to go home and get a good night's

17    sleep, and here's how it works tomorrow:  You get in.  As soon

18    as all 12 of you are in, which I hope will be real soon after

19    9:30, just knock on the door and say that you're all there and

20    then start deliberating.  The lunch order form will be in

21    there.  I really apologize for this lunch thing.  This is bad,

22    it's really bad.  All I can say, plead in my own defense, is

23    I'm not the person who made this happen right now, but that's

24    another story.  So we'll get your lunch order.  You can hand it

25    out at some point in the first hour of the morning, and Jim

ICIHIss2                          Charge

1    will take care of it, and then I'm here.

2           Now, I have a hearing tomorrow morning on an

3    application for emergency relief at 10 a.m.  You are my first

4    priority.  They are my second priority, but they don't know

5    that.  So if you send out a note like at 10:15 or 10:20, I'll

6    be in the middle of that hearing.  I'll have to stop that and

7    reconvene everybody.

8           Don't discuss the case tonight.  Why would you want

9    to?  Keep an open mind because you're still talking about these

10   things.  And I will see you sometime tomorrow when you tell me

11   you want to be seen.  OK.

12           (Adjourned to December 19, 2018, at 9:30 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25